BROWN, APPELLANT, *v.* ERB–HARPER–RIGNEY CO. ET AL., RESPONDENTS.

(No. 3,346.)

(Submitted June 12, 1913.   Decided June 28, 1913.)

[133 Pac. 691.]

*Receivers   Pendente   Lite—Evidence—Insufficiency—Refusal to Appoint—When Proper.*

Receivers *Pendente Lite*—Evidence—Insufficiency.
  1.   A mercantile company made an assignment of its property for the benefit of its creditors.   E. purchased the property from the assignee, executing and delivering to B., as trustee for the creditors, a mortgage as security, under the terms of which the proceeds were to be applied to a discharge of the claims of the creditors.   Under the terms of sale E. had the right to sell the goods in the regular course of business, being required, however, to make a monthly accounting to the trustee. Alleging breach of the terms of sale, the trustee commenced suit against E. to foreclose the mortgage, and asked that a receiver *pendente lite* be appointed.   *Held*, that refusal to appoint a receiver was proper, it appearing that the proceeds of sales were being applied to the purpose provided in the mortgage and that the creditors were not suffering or likely to suffer any substantial injury before final decree.

Same—Showing Necessary to Justify Appointment.
  2.   A receiver *pendente lite* should only be appointed upon a strong showing that such officer is necessary to preserve the property in controversy pending an adjustment of the ultimate rights of the parties.

  [As to when the appointment of a receiver is proper, see the note in 72 Am. St. Rep. 29.   As to the right of appointment before suit is instituted, see the note in Ann. Cas. 1912B, 236.]

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

ACTION by C. F. Brown, trustee, against the Erb-Harper-Rigney Company and others to foreclose a chattel mortgage. From an order refusing to appoint a receiver *pendente lite,* plaintiff appeals.   Affirmed.

*Mr. F. B. Reynolds,* for Appellant, submitted a brief and made oral argument.

Under the law applicable, and especially in view of the circumstances of this particular case, the provisions that mortgagor should remain in possession of the stock of goods, sell the same

in the regular course of trade and account therefor constituted a personal covenant on the part of the mortgagor which could not be assigned. (Jones on Chattel Mortgages, 5th ed., par. 459; *Daggett* v. *McClintock,* 56 Mich. 51, 22 N. W. 105; *Barnard* v. *Eaton,* 56 Mass. 294.) It would seem clear, therefore, that when mortgagor Erb disposed of his entire interest in the personal property and completely severed his connection with the business, he violated both the spirit and the letter of the mortgage in question, was in default in one of the essential conditions of the mortgage, and that by reason thereof the mortgagee had the right to declare the whole amount of the indebtedness secured by the mortgage due and payable, and to commence this action of foreclosure.

When a mortgagor defaults in the conditions of his mortgage, his rights under such mortgage immediately cease, and the mortgagee has the right to have the mortgaged property preserved intact to satisfy his claim. Even though defendant Erb himself had been in possession of said property and was continuing the sale thereof in accordance with the terms of the mortgage, yet if he was in default by reason of his failure to comply with any other conditions of said mortgage whereby it might be foreclosed, his rights to so continue in possession and carry on the business would immediately terminate upon a forfeiture being declared by reason of such default, and the mortgagee would have the right to take possession of the property and hold it for the satisfaction of his claim. If, under such circumstances and after default, Mr. Erb should persist in continuing to sell the goods in the regular course of trade or otherwise, the court should appoint a receiver of the property to prevent him from so doing, so that the property might not be depleted, thereby materially injuring the security. Such appointment would be justified either under subsection 2 of section 6698, Revised Codes, or under subsection 6. This principle may be applied to the case at bar with equal, if not greater, force than if the assignment of the mortgagor's interest in the property in question had not been made. (See *State*

*Journal Co.* v. *Commonwealth Co.,* 43 Kan. 93, 22 Pac. 982.)
A receiver may be appointed to keep property *in statu quo.*
(*H. B. Claflin Co.* v. *Furtick,* 119 Fed. 429.)   Where the mort-
gage provides that the mortgagor is to remain in possession of the
stock of goods and sell the same in the regular course of busi-
ness, but he neglects so to do, a receiver may be appointed
*pendente lite* even without notice.   (*O'Donnell* v. *First Nat.
Bank,* 9 Wyo. 408, 64 Pac. 337.)   "Upon a breach of the condi-
tions of a chattel mortgage, an absolute title to the property
thereupon vests at once without possession, in the mortgagee."
(Jones on Chattel Mortgages, sec. 699; *Heyland* v. *Badger,* 35
Cal. 404; *Mathew* v. *Mathew,* 138 Cal. 334, 71 Pac. 344; *Sum-
merville* v. *Stockton Milling Co.,* 142 Cal. 529, 76 Pac. 243.)
If, upon a breach of the conditions of a chattel mortgage, the
mortgagee is entitled to immediately take possession of the
mortgaged property, then it would seem clear that he would
have the right to have the mortgaged property preserved intact
to satisfy his claim against it, and if, instead of summarily
taking possession, he chooses to foreclose his mortgage through
the court, he would have the right to have a receiver appointed
when it appears that without such an appointment a consider-
able portion of the property will be disposed of by piecemeal, so
that it cannot be followed and the security be thus materially
injured.

*Messrs. O. F. Goddard* and *C. L. Harris,* for Respondents,
submitted a brief; *Mr. Goddard* argued the cause orally.

The record shows that the creditors, represented by the
trustee, were secured by mortgage on real estate owned by Erb,
in addition to the chattel mortgage, and neither the complaint
in the foreclosure of chattel mortgage nor the petition for a
receiver shows that the property mortgaged as security to the
creditors is not ample security for the payment of the debts,
and unless the petition shows upon its face a condition of
affairs that would satisfy the court that the security is not
ample, or that the debtors are insolvent, or that there is danger

of the mortgaged property being squandered or misappropriated, a court of equity would not allow the extraordinary remedy of a receiver to be invoked.

The doctrine has frequently been laid down by this and other courts, that the power of a court to appoint a receiver must be exercised with great care and the utmost caution, and with due regard for the interests, as well as the legal rights, of all parties sharing in the property. This language was used in the case of *Fluker* v. *Emporia City Ry. Co.*, 48 Kan. 577, 30 Pac. 18, and was quoted with approval by this court in the case of *Jacobs* v. *Jacobs Mercantile Co.*, 37 Mont. 321, 96 Pac. 723. This court in the same case quoted with approval from the case of *Hickey* v. *Parrot Silver & Copper Co.*, 25 Mont. 164, 64 Pac. 330, as follows: ''The power to appoint a receiver is to be exercised sparingly, and not as of course. A strong showing should be made, and even then the authority must be exercised with conservatism and caution.''

And in the same case this court quoted with approval from the case of *Benepe-Owenhouse Co.* v. *Scheidegger*, 32 Mont. 424, 80 Pac. 1024, as follows: ''The appointment of a receiver is an extraordinary remedy, to be resorted to only in cases of emergency.'' This court in the same case quotes the text of Mr. High, in his work on Receivers, third edition, section 3, which announces the same principle in strong language. The appointment of a receiver is, to a considerable extent, a matter resting in the discretion of the court. (High on Receivers, 3d ed., sec. 7.)

In a suit to recover the possession of property, the appointment of a receiver to take possession of said property, pending litigation, is a matter resting in the judicial discretion of the court, and should be determined with a view to the protection of the rights of all parties. Such appointment should not be made, unless it appears that the property will otherwise be in danger, and that there is a reasonable probability that the claimant will ultimately prevail in the suit. (*Moore* v. *Bank of British Columbia*, 106 Fed. 574.) In matters involving the dis-

cretion of the lower court, this court will not interfere, especially when the evidence upon which the lower court based its decision is conflicting. (*Anaconda Copper Min. Co.* v. *Butte & Boston Min. Co.,* 17 Mont. 519, 43 Pac. 924; *Heinze* v. *Boston & M. Copper etc. Min. Co.,* 20 Mont. 528, 52 Pac. 273; *Parrot Silver & Copper Co.* v. *Heinze,* 25 Mont. 139, 87 Am. St. Rep. 386, 53 L. R. A. 491n, 64 Pac. 326, 21 Morr. Min. Rep. 232; *Craver* v. *Stapp,* 26 Mont. 314, 67 Pac. 937; *Macdonald* v. *Gerrick,* 29 Mont. 372, 74 Pac. 1083.)

The petition for the appointment of a receiver in this case fails to show any sufficient grounds or reason therefor, and the evidence clearly shows that the business is being conducted in the same manner as it had been conducted prior to the change of possession of the mercantile concern, and that the change of possession has been acquiesced in by the trustee since the change, and that the present management has added nearly $3,000 to the stock since taking it over, and is selling the property in the usual course of business, and applying the proceeds according to the terms of the mortgage, and the evidence further shows that there has been no conversion of the proceeds by the new management, and that there is no danger of any conversion or misappropriation. The record further shows that there has been no breach or default in the terms of the mortgage that would entitle the appellant trustee to foreclose the mortgage, and if he is not entitled to foreclose his mortgage by reason of the breach of some condition or conditions of the mortgage, or some default in the payment of the moneys thereby secured, then, certainly, no receiver to take charge of the mortgaged property would be appointed by a court of equity, pending foreclosure proceedings.

Counsel for appellant relies principally upon the failure of the mortgagor Erb to remain in possession of the said goods and chattels, and to dispose of them in the regular course of business, and allege in the complaint that it was with the distinct understanding that he was to so remain in possession of said stock of goods and carry on the hardware business in connec-

tion therewith.   This is a gratuitous statement, there being no stipulation in the mortgage that Erb was to remain in possession of said stock of goods, and even if the terms of the mortgage could be so construed, the respondent has failed to allege any fraud or collusion of the parties, or any facts showing that the creditors have been, or will be, in any way injured by the conduct of the business under the present management, or that there has been, or is likely to be, any misappropriation of the property, or proceeds of the sale thereof, by the present management; all of the allegations in any way concerning this matter being simply statements of conclusions of law.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action to foreclose a chattel mortgage.   This appeal is from an order of the district court refusing to appoint a receiver [1] *pendente lite.*   On February 3, 1912, the defendant Erb-Harper-Rigney Company, a mercantile corporation doing business at Laurel, Yellowstone county, being financially embarrassed, made an assignment of all its property, real and personal, to George F. Clawson for the benefit of its creditors. Clawson immediately qualified as such assignee and entered upon the discharge of his duties.   On June 8, 1912, under an order of the district court of Yellowstone county, the creditors of the corporation consenting thereto, the assignee sold and conveyed all the property to the defendant Erb, a stockholder and the manager of the corporation.   The consideration of the sale was the assumption by Erb of the indebtedness of the corporation, amounting in all to $24,450.87.   Thereupon Erb executed and delivered to the plaintiff, as trustee for the benefit of the creditors and to secure the indebtedness due them, a mortgage upon certain real estate, including all owned by the corporation at the date of the assignment, and certain other belonging to Erb in his own right.   He also, and for the same purpose, executed a chattel mortgage upon the stock of merchandise theretofore owned by the corporation, consisting of hardware, farming im-

plements, *etc.,* together with the bills receivable and accounts due it from its customers. The real estate mortgage, it seems, was to run for the period of two years, though this fact does not distinctly appear. The chattel mortgage contained this provision: ''That said mortgagor shall remain in possession of and sell and dispose of the above-described goods and chattels in the regular course of business for the benefit of the mortgagee and that an accounting shall be made by the mortgagor to said trustee on the first of each and every month during the time this mortgage is in force, and the proceeds of the sales, after deducting the expenses of the business not to exceed $150 per month together with taxes, insurance and the interest on a real estate mortgage held by E. Vaughn, of Laurel, Montana, for $2,400, shall be turned over to said trustee by said mortgagor and shall be held by said trustee and shall be applied on said indebtedness by said trustee whenever the sums in his hands shall amount to 10 per cent of the total indebtedness.'' It describes the debts secured as evidenced in part by promissory notes, and in part by open accounts due and payable at different dates. It further provides: ''In case of default in the payment of the aforesaid principal sums of money, or any part thereof, then it shall be optional with said party of the second part, the mortgagee, and obligatory on him at the request of a majority (in number and amount) of the creditors to consider the whole of said principal sums immediately due and payable, and immediately to enter in and sell all and singular the premises hereby granted, and to sell and dispose of the same and all benefit and equity of redemption of the said mortgagor according to law.   *   *   * It is further agreed by the parties hereto that at the expiration of this mortgage it shall be renewed for the period of one year from the date of expiration.''

Upon the execution of the mortgages the defendant Erb took possession of the property and proceeded to sell the merchandise in the regular course of business. He continued to do so until June 22, 1912. On this date he sold to Fred. Darrow 51 per cent of his equity under the mortgages, and to defendant Rig-

ney 33 per cent, who, having assumed to discharge the debts secured thereby in proportion to the amounts of their respective shares, thereafter conducted the business under the firm name of Darrow & Erb. This arrangement was continued until October 1, when Rigney sold his interest to defendant Steele, who assumed Rigney's obligation. On January 22, 1913, Erb repurchased the interest theretofore sold to Darrow, and thereafter, on February 19, sold his entire interest to defendant Harris. This action was brought on April 11. At that time Steele and Harris owned and were in possession of the entire property subject to the mortgage.

The complaint, after making a statement substantially as above, alleges that from and after the transfer to Harris on February 19, Erb ceased to have any further interest in the business; that he has not been in the possession of the property, and has not rendered any accounting to plaintiff; that he has not paid the debts secured by the mortgage, or any part of them, except the sum of $1,517.72; that the balance with interest is wholly due and unpaid, and that by virtue of the option contained in the mortgage, and upon request by a majority of the creditors, to whom is due the greater portion of the indebtedness, the plaintiff has elected to declare the whole thereof immediately due and payable. The prayer is for the usual decree in foreclosure, and for costs, including attorneys' fees.

The material allegations of the petition for the appointment of the receiver are substantially the following: That it was the understanding by the creditors, and it was part of the arrangement whereby the mortgage was given, that the defendant Erb was to give the business his personal attention and supervision; that the obligation assumed by him was personal to the creditors; that he has not continued in possession of the property as in the mortgage provided, but has sold it in bulk, and has ceased to have any interest therein or in the business; that the property has gone into the possession of defendants Steele and Harris; that through the sales made by him, Erb received a valuable consideration, for which he has failed to account to plaintiff;

that Steele is a resident of the state of Colorado; that neither he nor Harris is personally conducting said business; that these defendants are selling said property in the usual course of business, and will continue to do so unless a receiver is appointed; that by reason of said sales the mortgaged property will be materially injured; and that it is therefore necessary for the protection of the creditors that a receiver be appointed pending the action.

The hearing was had after notice, upon affidavits and oral testimony. While there was some controversy upon the question whether the dealings had by Erb with Darrow, Steele, Rigney and Harris were consented to by the plaintiff, the evidence shows clearly that Erb was never in the active conduct of the business, but that it was conducted by Rigney prior to the date of the assignment, and that it has been conducted by him since the execution of the mortgage, and this with full knowledge by the plaintiff and the creditors. Since Erb took charge under the mortgage, Rigney has been making sales in the usual way. Prior to Erb's sale to Steele and Harris, Rigney kept strict account of all transactions. He deposited the proceeds of sales to the credit of the plaintiff and Erb in strict accordance with their instructions, and they have been devoted by the plaintiff to the discharge *pro tanto* of the claims of the creditors. So, also, the evidence discloses that he was in charge for Harris and Steele, and was pursuing this course at the time this action was commenced. There has been no diversion or misappropriation of any of the property or proceeds of sale. The sales of the different interests by Erb were in fact all subject to the rights of plaintiff and the creditors, and were understood to be so both by himself and the plaintiff; the purpose in each case being to substitute the purchasers in Erb's place to carry out the terms of the mortgage contract. In none of the transactions did Erb receive any money, but merely exchanged his equity in the property for equities in real estate which was also subject to encumbrances. In short, Erb and the other defendants have faithfully observed all the terms of the mortgage, except that

Erb has not been at all times actually in physical possession of the mortgaged property and in personal management of the business. It is true that the net result to the creditors has not been large, only one small dividend having been paid to them during the year of 1912. This fact is explained by the statement of Rigney that when the mortgage was executed and he resumed charge under Erb, the season for the sale of farm implements for the year 1912 had passed, and hence that sales were limited exclusively to other portions of the stock. He expressed the opinion, however, that if the business should be allowed to go on without interference, the sales for the season of 1913 would produce funds enough to make substantial payment to the creditors. It will be observed that it is not alleged, either in the complaint or in the petition, that Erb is not entirely solvent and able to meet all the demands of the creditors, or that the real estate held under the other mortgages is not amply sufficient to secure them. The evidence does not disclose what the facts in this connection are. The breach of the contract alleged as the ground upon which foreclosure is sought is that the obligation assumed thereunder was personal to the creditors, and that Erb has failed to continue in possession of the property and give the business his personal supervision. Assuming that the plaintiff may, on this ground, maintain his action for foreclosure prior to the maturity of the mortgage, do the facts disclosed warrant the appointment of the receiver? The statute itself (Rev. Codes, sec. 6698), in our opinion, answers this inquiry in the negative. It requires a showing that the property is in danger of being lost, removed or materially injured. It will be noticed that the ground of the application is that by reason of sales being made by defendants, the mortgaged property may be materially injured unless a receiver is appointed. This statement is a mere bald conclusion, and is without support in the facts proved. The mortgage itself provides for the sales just as they are being made. It was well known and understood at the time the mortgage was executed that the stock was not of sufficient value to secure all the indebt-

edness. The very purpose of it was to have the business continue, and thus to preserve the value of the security. While the defendant Erb is not personally in charge of the business, sales are being made, and the proceeds are being devoted to the discharge of the claims of the creditors in strict conformity with the terms of the mortgage. Hence the creditors are not suffering any injury, nor is their security being impaired further than as a consequence of the depletion of the stock, a result which must necessarily follow from an observance of the terms of the mortgage; for it is provided therein that Erb shall sell the property and account for the proceeds. If this provision is observed, the creditors cannot suffer injury.

The remedy of a receivership, drastic and violent as it is in [2] effect, because it deprives the defendant *in limine* of the possession of his property, should not be allowed in any case except upon a statement of facts showing that it is necessary to prevent injury to the rights of the plaintiff pending the action. "The power to appoint a receiver is to be exercised sparingly and not as of course. A strong showing should be made, and even then the authority must be exercised with conservatism and caution." (*Hickey* v. *Parrot Silver & Copper Co.*, 25 Mont. 164, 64 Pac. 330.) "The appointment of a receiver is an extraordinary remedy, to be resorted to only in cases of emergency." (*Benepe-Owenhouse Co.* v. *Scheidegger*, 32 Mont. 424, 80 Pac. 1024.) The exercise of the power is lodged in the discretion of the court, but the discretion is not arbitrary. It must be exercised in conformity with the rule that a receiver is necessary as an auxiliary to the attainment of the ends of justice, by the preservation of the property in controversy pending an adjustment of the ultimate rights of the parties. (High on Receivers, 3d ed., sec. 19.)

Since it appears that the property involved here is being devoted to the purposes for which it was set apart by the parties, and that the creditors are not suffering, nor are liable to suffer, any substantial injury before final decree, we do not think the district court abused its discretion in denying the application.

The appointment of a receiver would serve no useful purpose, but would tend rather to impair the value of the security by subjecting it to the expense which is always a necessary incident of a receivership.

The order is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SANNER concur.

