STONER, Respondent, *v.* HANNAN, Appellant.

(No. 8,245.)

(Submitted March 5, 1942.   Decided March 28, 1942.)

[127 Pac. (2d) 233.]

212

*Mr. M. J. Lamb,* for Respondent R. E. Stoner, submitted an original and a supplemental brief, and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

R. E. Stoner filed an action in the district court of Yellowstone county to secure the dissolution of the partnership in which the defendant S. C. Hannan was his partner. Shortly after filing his complaint, plaintiff moved the court for the appointment of a receiver *pendente lite*. The motion was based on the complaint. To the motion defendant interposed objection supported by his affidavit. After hearing, the court appointed a receiver of the partnership business. This appeal is from that order.

Before discussing the facts it may be well to set out the statute under which the court is empowered to appoint a receiver in a case like this. Whether the court erred depends on whether the record brings this case within the statute. The court's authority comes from section 9301, Revised Codes of 1935. So far as here applicable, it provides: "A receiver may be appointed by the court in which an action is pending, or by the judge thereof: 1. In an action * * * between partners * * * where it is shown that the property or fund is in danger of being lost, removed, or materially injured: * * *."

Respondent urges that subdivision 6 of the above section also applies. It provides that a receiver may be appointed "in all other cases where receivers have been heretofore appointed by the usages of courts of equity." Whether the action of the court is tested by the provisions of subdivision 1 of section 9301, or by the common-law rules as contemplated by subdivision 6 of that section, the result is the same. In *McIntosh* v. *Perkins,*

13 Mont. 143, 32 Pac. 653, the court, after holding that no ground as contemplated by section 231 of the Code of Civil Procedure, now subdivision 1, supra, appeared, said: "This statute (sec. 229) declares the general doctrine on this subject [appointment of a receiver in cases involving partnerships] long prevailing in courts of equity."

While the court has a large discretion in denying or granting the application (*Pereira* v. *Wulf,* 83 Mont. 343, 272 Pac. 532; *Brown* v. *Erb-Harper-Rigney Co.,* 48 Mont. 17, 133 Pac. 691; *Montana Ranches Co. v. Dolan,* 53 Mont. 397, 164 Pac. 306), that discretion is limited by the provisions of section 9301.

It may be well to note, also, before examining the facts, the universal rule as stated by this court in *Brown* v. *Erb-Harper-Rigney Co.,* supra: "The power to appoint a receiver is to be exercised sparingly and not as of course. A strong showing should be made and even then the authority must be exercised with conservatism and caution. * * * The appointment of a receiver is an extraordinary remedy to be resorted to only in cases of emergency." And in *Montana Ranches Co. v. Dolan,* supra: "Because of the extraordinary harshness of the remedy, courts of equity have ever been reluctant to apply it." In *Scholefield* v. *Merrill Mortuaries, Inc.,* 93 Mont. 192, 17 Pac. (2d) 1081, this court said: "The power to appoint should be exercised 'sparingly and with extreme caution' and only to prevent manifest wrong immediately pending or irreparable injury."

The general rule as it appears in 53 C. J. 32, is stated thus: "The power to appoint a receiver is a delicate one which is jealously safeguarded, and reluctantly exercised by the courts, * * *. The power should be exercised sparingly with caution and circumspection, and only in an extreme case, under extraordinary circumstances." And this is particularly true where both parties have equal rights of possession and management of the property, as here (53 C. J. 44). It is there said: "But the courts are adverse to appointing receivers in such a case, and generally in the absence of fraud, waste or danger of

loss or destruction, and where neither has excluded the other from his enjoyment of his possession or rents and profits a receiver will not be appointed.'' With these rules in mind we turn to a consideration of the record.

The motion for the appointment of the receiver is based on the complaint seeking dissolution of the partnership. We look to it for the allegations supporting the appointment of the receiver for the matters charged as showing the partnership property to be in danger of being lost, removed or materially injured.

The complaint alleges, first, that the parties to the action entered into a general partnership for an indefinite period for the purpose of engaging in the business of selling gasoline products and other merchandise generally sold in gasoline filling stations; that for the purpose of conducting the business certain property was bought, and that since March, 1918, they have been engaged in the partnership enterprise. The first allegation upon which the plaintiff relies for the appointment of a receiver is that the defendant appropriated from the receipts and profits of the business to his own use large sums of money greatly in excess of the proportion to which he is entitled, and that he has attempted to conceal the misappropriations of that money, and that, in spite of demands on the part of plaintiff, the defendant at the time of the filing of the case has continued that practice.

The second allegation upon which plaintiff relies to bring this case within section 9301 is that the defendant borrowed $4,000 from one F. B. Mjelde, and as security for the payment of that sum he mortgaged to Mjelde an undivided one-half interest in the defendant's one-half interest in the business; that that money has not been repaid and that Mjelde threatens to institute proceedings against the business to enforce the claim; and further that the total of defendant's indebtedness exceeds the value of his assets, and that defendant is insolvent.

Lastly, the complaint alleges that the defendant has collected debts due the partnership and applied the money to his own use.

Upon the hearing further grounds were advanced for the appointment of a receiver by the testimony of the plaintiff wherein he stated that the partners no longer agreed and that the enterprise was no longer a profitable one.

In opposition to the motion for the appointment of a receiver, defendant filed his affidavit. In it he sets out that it has been the general practice of the partners, from time to time as their personal needs demanded, to draw from the partnership funds sums of money for which tabs or memoranda were made or kept, and that any sums he has withdrawn in the past have been in accordance with that general practice; that he has made no attempt to conceal any amounts which he withdrew, but on the other hand in every instance, by deposit of tabs or otherwise, reported to the other partner any sums of money which he so withdrew. He states that the same is true also as to accounts collected by the two parties. He denies that his obligation to the partnership exceeds the value of his share of the profits or of his interest in it, or that he is insolvent. He alleges that the business has been carried on at a profit over the years with a steadily growing surplus. He states that there has been no general accounting between the partners but that, on the other hand, from time to time informal accounts have been cast up between them and agreed upon, and that he stands ready and willing to account to the partnership upon an accounting at any time. He states that the plaintiff assented in writing to the loan to him by Mjelde and to the giving of security for its repayment. The affidavit concludes with a general denial of the allegations of the complaint.

The testimony of the plaintiff, who was the only witness called, when considered with the complaint and affidavit, amounts to an agreed statement of facts. The parties differ, of course, as to the inferences to be drawn from those facts.

Taking up first the matter of the Mjelde loan, shortly after the inception of this suit, Mjelde filed a complaint in intervention seeking a foreclosure of his mortgage, and with it an application for the appointment of a receiver. This latter ap-

plication he abandoned. There appears in the record plaintiff's written assent to the Mjelde loan and to the pledging of one-half of the defendant's interest in the property as secured. In view of this situation we do not think the plaintiff can now complain. Further, it is clear that this situation, particularly the suit by Mjelde, does not jeopardize the partnership as is con-templated by section 9301.

The testimony of plaintiff, together with the exhibits, do not ██ ██ support the allegation that the defendant concealed or attempted to conceal, any amounts of money which he drew from the partnership funds. It does show that the defendant reported by tabs or otherwise any moneys he withdrew. Plaintiff admits that prior to a settlement of accounts in 1938 it had been the usual practice on the part of both partners to draw from the partnership funds for their personal use and to deposit tabs in the till to show the amount taken. He states that upon the accounting of 1938 it was agreed that that practice should be discontinued, and that since that time he had not drawn any money from the partnership funds in that manner. From 1938 on plaintiff testifies that certain funds were set over to each of the parties as salaries; however, except for 1939, these sums were small, and no specific agreement as to the amounts to be withdrawn as salary or as each one's share of the profits for the current year appears.

Section 7985 of our Codes provides that in the ''absence of any agreement on the subject, the shares of the partners in the profit or loss of the business are equal.'' In the absence of an agreement, then, defendant was entitled to draw from the profits of the firm an amount up to one-half of those profits.

Plaintiff testified on the basis of certain records that in 1941 the partnership account carried a surplus of over $11,000 which came from accumulated profits of the business not withdrawn by the partners. The total amount which defendant withdrew, excluding salary beginning in 1938 according to the record, is $1,005.00. While the plaintiff testified to the effect that certain current accounts and debts were not being paid as rapidly

as they should be, yet the record does not reveal that these withdrawals on the part of the defendant in any way jeopardized the business; nor does the record show that the amounts withdrawn by the defendant are out of proportion in any way to the value of his interest in the partnership assets or in the profits. There is nothing in the face of these withdrawals, either in the amount or in the manner in which the withdrawals were made, which brings this case within section 9301. These withdrawals do not place the partnership assets in danger of being either lost, removed or materially injured.

In *Masterson* v. *Hubbert,* 54 Mont. 613, 173 Pac. 421, this court had occasion to consider a similar situation, and held that even though the appropriation by one partner of partnership funds were fraudulent, "it is not sufficient grounds for the appointment of a receiver * * * in the absence of a showing that there is danger that money in which plaintiffs [the other partners] are interested will ultimately be lost to them, and particularly in the absence of any allegation [in this case any showing] that defendant is insolvent and unable to respond for the amount found due upon an account (High on Receivers, sec. 497)." The court goes on to say: "The purpose of appointing a receiver in an action of this character is to prevent the partner at fault dissipating the common property and thereby defeating the object of the suit (20 R. C. L. 1962). It is not the province of the court, through its receiver, to become the general manager of private enterprise or conduct the business of a partnership (*Murphy* v. *Patterson,* 24 Mont. 591, 63 Pac. 380)."

What is true of these withdrawals is also true of partnership accounts which defendant collected. The practice over a period of years in the collection of some accounts was this: One of the partners would personally owe an obligation to some tradesmen, and in turn the tradesman would owe an obligation to the partners. The individual partner then assumed the obligation of the tradesman to the partners and thereby discharged his individual obligation to the tradesman. The account then

was considered as a withdrawal of the amount of the account on the part of the partner exactly the same as though that amount had been taken in cash from the till and a tab deposited in lieu thereof. This practice had continued over the years and, while the plaintiff alleged that the defendant had attempted to conceal and had concealed such transactions, the record does not bear out that allegation, instead the contrary appears true. The amounts so collected by the defendant were insignificant, and what is said as to the withdrawals applies with equal force to them.

In support of the appointment of the receiver plaintiff relies on the fact that the partnership has been losing money. The record does not bear him out on this point. While it does appear that the amount of profit each year has perhaps been going down, yet, according to his own testimony, he figured the profit for the year 1940 at $3,438.90, if no salary for the partners is provided. However, even though the partnership were actually losing money, unless those losses endangered the partnership assets as provided in section 9301, they would afford no basis for the appointment of a receiver. (*Buchhalter* v. *Myers*, 85 Colo. 419, 276 Pac. 972; 53 C. J. 45.)

Plaintiff testified that there were a number of partnership debts outstanding, some of them in a considerable amount. Not a word appears in the record, however, to show that any of them, with the exception of the Mjelde claim, was being pressed, and nothing to show that they in any way endangered the operation of the business enterprise by the partners, or that they brought the case within section 9301.

Finally plaintiff urges that upon his testimony that the partners no longer agreed—and in fact were not speaking to each other—a receiver should be appointed. He admitted business was going on as usual, and that he and the defendant worked overlapping shifts. While he testified that they could no longer consult on anything, yet he did say that the business was open from day to day as usual, and nothing in this disagreement presents any emergency, as contemplated by the

cases, which would require the appointment of a receiver to operate the business during the pendency of the dissolution proceedings. No situation appears as that set out in 53 C. J. at page 44, where the disagreement between the parties was such that they could not agree on the management of the property, its disposition, or otherwise, and as a result the property was in immediate danger of being lost or materially injured. This court has passed directly upon the question involved, where the record showed a disagreement between the parties, in *Masterson* v. *Hubbert,* supra. The court there said: "It is alleged that defendant [one partner] has treated plaintiffs [the other partners] with abuse and disrespect and refuses to talk with them. But courts of equity will not interfere merely because of quarrels or disagreements between persons jointly interested in business (High on Receivers, 4th ed., sec. 474), and it is not one of the functions of a receiver to establish or maintain the *entente cordiale* between partners. It is not alleged that this lack of harmony injuriously affects the business." In this case it is not shown that the disagreement between the parties injuriously affected the business, and, at least, the record fails to show that the disagreement in any way endangered the partnership assets, as contemplated by section 9301.

The Montana cases quoted from in this opinion are merely a restatement of the holdings of the courts in common-law jurisdictions. In High on Receivers, 4th Edition, Chapter 13, page 666, in speaking of appointment of receivers generally in partnership cases, the author says that in order to justify the appointment of a receiver there must be "wilful acts of fraud by the defendant, such as misappropriations of firm funds, making false and improper entries upon the firm books; and depriving claimant of access to the books and concealing from him the true condition of the business," and a receiver may be appointed when "the pleadings disclose a serious and apparently irreconcilable disagreement between the partners both as to the control and disposition of their effects and as to their respective demands against each other," but "it should however

clearly appear that on account of the dissentions and disagreements complained of, serious injury will result to the parties unless a receiver is appointed, and. such dissentions without fault of. defendant, will not justify the summary interposition of a receiver unless it is clearly shown that the parties will suffer loss by continuing in possession of the property.'' The author then discusses specific situations in which the appointment of a receiver is made or refused. So, end of confidence between the partners is a sufficient ground for the interposition of a court of equity only ''when one of the two partners has exclusive control of the firm business and so mismanages it that the firm speedily becomes insolvent and all friendship and confidence between the partners are destroyed,'' so that ''the appointment of a receiver may be regarded as the only practicable method of speedily and peaceably winding up the affairs of the firm.'' (Page 667.) ''Failure to cooperate in the management of the business no ground for receiver. * * * Nor does the fact that the partners' business has been unprofitable, or that it should be discontinued and the firm dissolved, warrant a court in taking property out of defendant's hands to be administered by a receiver.'' (Page 668.) ''When the conduct of the defendant partner has been such as to satisfy the court that he is deliberately resolved to break up and ruin the firm business, * * * a fit case is presented for * * * a receiver.'' Also where it appears that the defendant partner ''has acted in bad faith, has disposed of part of the property with an attempt to defraud creditors.'' (Page 669.) See also 47 C. J. 1220, and 47 C. J. 817, where it is said: ''In accordance with general rules [of statute and common law] a receiver will not be appointed * * * in the absence of some clear breach of duty or conduct amounting to fraud, or *fact showing a danger to the partnership assets.''* (Italics supplied.) And see 53 C. J. 39.

Bearing in mind, then, that provisions of the statute—sec. 9301—and what this court and others have announced as the rule which must guide the court in determining whether or

not a receiver should be appointed, as set out in the first part of this opinion, and particularly bearing in mind that the appointment of a receiver entails great expense and hardship in the ordinary case, we are convinced that the showing here made in support of the application for appointment of the receiver falls short of that required by section 9301, subdivision 1. Therefore the trial court erred in appointing the receiver, and the order is set aside.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ANDERSON and MORRIS concur.

Rehearing denied June 27, 1942.