No. 13652

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

_____

LEONARD ELIASON and R. E. INDRELAND,

Plaintiffs and Appellants,

-vs-

ROBERT EVANS,

Defendant and Respondent.

_____

Appeal from:  District Court of the Third Judicial District,
              Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

    For Appellant:

        Daniels and Mizner, Deer Lodge, Montana
        M.K. Daniels argued, Deer Lodge, Montana

    For Respondent:

        Knight, Dahood and Mackay, Anaconda, Montana
        Conde F. Mackay argued, Anaconda, Montana

_____

Submitted:  April 28, 1978

Decided: AUG 21 1978

Filed:    AUG 21 1978

Thomas J. Kearney
                                   Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Plaintiffs appeal from an order of the District Court, Powell County, dissolving a temporary restraining order, denying plaintiff's motion for an injunction pendente lite, and adopting defendant's proposed findings of fact and conclusions of law.

The action below involved three parties asserting conflicting water rights. The land involved is located in the Deer Lodge Valley in Powell County, approximately 8 miles south of Deer Lodge, Montana. All of the land is bounded on the west by Interstate 90 and on the east by the Clark Fork River. Defendant's land is located south and adjacent to land previously owned by Mr. and Mrs. Raymond Johnson. The Johnson's property has apparently passed to their daughter, Audrey Ragsdale. For clarity, this property will hereafter be referred to as the Johnson-Ragsdale land. Plaintiffs' land is situated immediately east of the Johnson-Ragsdale property. It is bounded on the immediate east by the Clark Fork River. All of the property slopes in a northeasterly direction toward the Clark Fork River.

In approximately 1955, defendant used a drag line to construct a drainage ditch on the western boundary of his property. This ditch is estimated to be 35 feet wide and five to seven feet deep; it extends about one mile north before turning due east into a smaller irrigation ditch. The smaller ditch runs along the northern boundary of defendant's land.

In the past, the excess water from the Evans' irrigation ditch emptied and drained onto the southeast corner of the Johnson-Ragsdale property. From there, it flowed over the Johnson-Ragsdale property and onto the property owned by the plaintiffs.

-2-

Plaintiffs and their predecessors in interest had, until 1970, utilized this water to irrigate their hay fields and pastureland.

In approximately 1971, defendant installed a sprinkler system on his property and discontinued using the water from his irrigation ditch. This action increased the volume of water flowing onto the Johnson-Ragsdale property and in turn, provided the plaintiffs' with more water for their land. However, the additional water caused extensive flooding and erosion of topsoil on the Johnson-Ragsdale property.

To alleviate the destruction of their property, the Ragsdales built a drainage ditch across the western portion of their property. This ditch extended in a southerly direction until it merged with Evans' drainage and irrigation ditches. At the intersection of the Johnson-Ragsdale ditch and Evans' irrigation and drainage ditches, Evans built a small earthen dam which diverted all of the water into the Johnson-Ragsdale ditch, to the eventual exclusion of the plaintiffs' land. The Ragsdales then filed an application for water appropriation on all water flowing from the Evans' ditch. With the dam in place, all water which normally flowed to the plaintiffs' land had ceased. The Ragsdales have been using the water to operate their sprinkling system.

On several different occasions, the small earthen dam has become inoperable and water would resume flowing across the Johnson-Ragsdale property, to be later used by the plaintiffs. To permanently prevent the water from flowing to the plaintiffs, Evans, in 1975, brought in heavy equipment and built a much larger, more permanent dam.

In response, the plaintiffs filed this action in Deer Lodge County to force the removal of the dam to allow the water to resume flowing to plaintiffs' land. Contemporaneous with filing their complaint, the plaintiffs obtained a temporary injunction against defendant and scheduled a show

cause hearing for June 14, 1976. The hearing was actually held on June 21, 1976, at which time the parties produced a total of five witnesses.

The District Court did not enter an official order after the June 21, 1976 hearing. Instead, the District Court judge apparently requested the parties submit proposed findings of fact and conclusions of law.

Defendant submitted his proposed findings and conclusions on August 5, 1976. The District Court adopted the defendant's findings by making a notation at the bottom of the submitted document, and by signing the order which concluded as follows: "Adopted this 6th day of August, 1976. Let Judgment be entered accordingly."

On August 19, 1976, thirteen days after the Court adopted defendant's findings and conclusions, the plaintiffs submitted their proposed findings and conclusions, and they also filed an amended complaint. The amended complaint was substantially the same as the original except that in the amended complaint the plaintiffs had joined one additional defendant and also were more specific in their prayer for relief.

On September 10, 1976, defendant filed a motion to dismiss the amended complaint on the grounds it did not state a claim upon which relief could be granted. On September 27, 1976, without further action by the Court, defendant filed his answer, a general denial of plaintiffs' allegations. Defendant' answer was the last action taken by either party.

On November 1, 1976, the District Court entered an order dissolving the temporary restraining order, denying plaintiffs' motion for an injunction pendente lite, and adopting the defendants findings of fact and conclusions of law. It is from this last order that plaintiffs appeal.

-4-

In their appeal the plaintiffs contend (1) that the District Court deprived the plaintiffs of substantive property rights in a summary hearing; (2) that the District Court made an adjudication of the relative rights and priorities of the parties; and (3) that the findings of fact and conclusions of law do not conform to the evidence presented by the parties.

Before addressing the specific issues presented by plaintiffs' appeal, we must resolve one preliminary question. Some disagreement exists among the parties concerning the purpose of the June 21, 1976 hearing. The confusion stems from certain language used by plaintiffs in their complaint and show cause order. A review of the District Court files shows the prayer in plaintiffs' original complaint sought a temporary restraining order, a show cause hearing and such further relief as this Court may deem proper. Then, in his order to show cause signed by another District judge, the plaintiffs used the phrase "show cause why he [defendant] should not be permanently restrained from interferring with said waters and diversions." (Emphasis and brackets added). Based on this language, defendant contends both parties understood the hearing on June 21st would be on the "merits" and would finally settle plaintiffs' water right claim. We cannot accept this contention.

It is well settled that a temporary restraining order is an interlocutory order issued often on an ex parte basis. The restraining order is intended to preserve the status quo until a show cause hearing can be held. Electric Co-op Inc. v. Ferguson (1951), 124 Mont. 543, 554, 227 P.2d 597. A temporary restraining order is effective only for the reasonable time necessary to give notice and schedule a hearing to determine

-5-

the appropriateness of an injunction pendente lite. State ex rel. Cook v. Dist. Court (1937), 105 Mont. 72, 75, 69 P.2d 746. See also: Boyer v. Karagacin (1978), _____ Mont. _____, _____ P.2d _____, 35 St.Rep. 939.

We conclude that plaintiffs, in scheduling the show cause hearing for June 21, 1976, were trying to follow the standard procedures set up to obtain injunctions pendente lite. We can find no support for defendant's position that the June 21, 1976 hearing was agreed or understood to be a hearing on the "merits" of plaintiffs' claim. Absent clear evidence of an agreement or an understanding, we must assume plaintiffs intended the hearing to be limited to a finding on the appropriateness of an injunction pendente lite.

Having determined the purpose of the June 21 hearing, we turn now to the merits of plaintiffs' assignments of error. For convenience, plaintiffs first and third assignments can be consolidated. Simply stated, plaintiffs contend the District Court should not have entered any findings of fact or conclusions of law. Plaintiffs take the position that any findings or conclusions dealing with the merits of their complaint are premature. They stress, although extensive testimony was received on June 21, 1976, the trial court did not receive enough evidence to resolve the merits of plaintiffs' claim. Defendant, on the other hand, contends the evidence produced at the hearing was sufficient to support the findings and conclusions of the District Court.

After a careful examination of the conclusions of law, we believe plaintiffs are correct and the findings of fact and conclusions of law should be vacated. The conclusions, as adopted by the District Court, provide:

-6-

"Plaintiffs have no water right to the water from the Evans ditch either by right of appropriation or by adverse use.

"That an appropriation as to this water was filed and completed by Raymond J. Johnson and Lillian M. Johnson and is first in time to any claim made by Plaintiffs.

"That Plaintiffs have no right to enter upon Defendant Evans property and in any way change, divert or alter the ditches located thereon."

These conclusions were purportedly derived from evidence presented at the June 21, 1976 hearing and were entered on November 1, 1976.

We have already stated that the primary purpose of the June 21, 1976 hearing was to determine the propriety of an injunction pendente lite. It is well established that substantive property rights cannot be adjudicated in a summary way. Ryan v. Quinlan (1912), 45 Mont. 521, 124 P. 512. The general rule is that title to, or right of possession of real estate may not be litigated in an action for an injunction. Davis v. Burton (1952), 126 Mont. 137, 246 P.2d 236. In the same vein, water rights should not be resolved in a preliminary proceeding for injunctive relief.

The problems inherent in trying the merits of a case at an injunctive hearing are obvious. Typically, an injunction, or a motion for an injunction is filed very early in the proceedings, usually before discovery has been completed and often before the pleadings of the parties are complete. At such juncture, the District Courts normally do not have sufficient evidence to conclusively resolve the merits of the case. The present proceedings are a good example of why property rights should not be adjudicated in a summary fashion.

The hearing in this case was scheduled for June 21, 1976, only 11 days after the plaintiffs filed their original complaint. Indeed, because Rules 30 and 31, M.R.Civ.P., contain

-7-

restrictions as to when discovery can be commenced, it does not appear that plaintiffs could have been prepared on June 21, 1976, for a final trial on the merits.

Additionally, we find defendant had not yet filed his answer on June 21, 1976. This last fact is significant because regardless of how defective plaintiffs' first complaint may have been, under Rule 8, M.R.Civ.P., plaintiffs had an absolute right to amend their complaint prior to the time the answer was filed.

Accordingly, we hold plaintiffs' allegations were not ripe for final decision on June 21, 1976. The trial court should have limited its inquiry to the appropriateness of an injunction pendente lite. Since its inquiry and subsequent decision went beyond these limits, the findings of fact and conclusions of law must be vacated.

We note that plaintiffs later filed an amended complaint in this action. The new complaint raises the possibility that plaintiffs may recover if they can establish a valid water right. Under the circumstances recovery can possibly be predicated on section 89-801, R.C.M. 1947, which was in effect during the crucial time periods involved in this case. That section allows "waste" water to be appropriated if the requisites of the statute are met. The plaintiffs, of course, bear the burden to prove a valid appropriation and any discussion of the merits of their claim would be premature. Today's decision simply vacates the findings of fact and conclusions of law entered by the District Court. Additionally, since plaintiffs did not challenge the denial of their motion for an injunction pendente lite, the trial court's determination on the matter is affirmed.

The order is vacated and this case is remanded to the District Court for proceedings consistent with this opinion.

_Daniel J. Shea_
Justice

We Concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_Gene B. Daly_

_John C. Sheehy_
Justices