No. 91-587

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

JOHN H. CROWLEY,

    Plaintiff and Respondent,

-v-

VALLEY WEST WATER COMPANY, a Montana
corporation, R MONTANA, INC., a
Montana corporation, and MISSOULA
WATER WORKS LIMITED PARTNERSHIP, a
Montana limited partnership.

    Defendants and Appellants.



FILED

OCT 13 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        George C. DeVoe, Missoula, Montana

    For Respondent:

        Christopher B. Swartley, Datsopoulos, MacDonald &
Lind, Missoula, Montana

Submitted on Briefs:  August 4, 1994

Decided:  October 13, 1994

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendants appeal the Order of the District Court of the Fourth Judicial District, Missoula County, appointing a receiver to administer their assets during the pendency of this litigation. In addition to the request for appointment of a receiver, plaintiff has also asserted claims of fraudulent conveyances and alleged a constructive trust; these claims are not before this Court at this time. We affirm.

The sole question in this appeal is whether the District Court erred in appointing a receiver to handle assets of defendants.

Plaintiff John H. Crowley (Crowley) and Valley West Water Company (Valley West) negotiated a written contract signed July 1, 1981, agreeing to transfer Crowley's shares of stock in Valley West back to the corporation for $75,000. Crowley was president of Valley West and owned 25 percent of total shares prior to the sale. The only other shareholder was Charles Isaly (Isaly), secretary of the corporation.

The contract between the parties provided that $20,000 would be paid to Crowley by January 4, 1982, and that the $55,000 remaining balance would be amortized over ten years and paid in quarterly installments at 12 percent interest on the declining balance. The contract also provided for additional security, including the requirement that an escrow account be established for payments to Valley West, so that Crowley would receive his payments under the contract before the balances could be paid to Valley West. The contract also provided that Crowley's rights to receive

2

quarterly payments would be protected if Valley West transferred its interest in the water system operating rights to another entity. Further, it had provisions relating to default by Valley West by which Crowley could foreclose on Valley West pursuant to foreclosure provisions for trust indentures, to apply as though the security provided by Valley West was real property subject to a trust indenture.

Valley West's major asset was the water system operating rights it owned under an agreement with the City of Missoula. When Valley West and Crowley contracted to sell Crowley's stock back to Valley West in 1981, Crowley knew that Valley West intended to try to sell its operating rights. Valley West sold the operating rights on November 18, 1982 to R Montana, Inc. The same day, R Montana, Inc. sold the operating rights to Missoula Water Works Limited Partnership (Missoula Water Works). Concurrently, Missoula Water Works executed an agreement with Valley West to "lease back" the operating rights to Valley West. Although Montana law requires that any sale of assets of a public utility be approved by the Montana Public Service Commission, the Commission did not approve any sale of Valley West's assets between 1981 and 1991 and does not recognize either of these sales as valid.

For approximately eight years, quarterly payments under the contract between Crowley and Valley West were made as agreed through the escrow account. Starting in September 1989, Valley West stopped making these payments. Pursuant to the contract's default provisions, Crowley gave thirty days notice of default to

3

Valley West on April 9, 1990, and instituted the breach of contract action against Valley West on June 19, 1990. Crowley later amended the complaint to include claims for fraudulent conveyance and constructive trust. After Valley West notified its customers that effective June 1, 1991, Missoula Water Works would assume revenue collection responsibilities for customer water charges, Crowley amended his complaint again to add Missoula Water Works as a defendant.

Isaly is president and sole shareholder of Valley West and the only general partner of Missoula Water Works. An addendum to the 1982 lease agreement between Missoula Water Works and Valley West, which was signed by Isaly for both entities, states they had

> just and substantial cause to believe that in the near future there will be attempts by creditors of Lessee to attach or in some way interfere with the flow of customer payments to Lessee for water services.

This addendum, dated June 4, 1991, allowed Missoula Water Works to collect income for water services that previously was paid directly to Valley West. Isaly subsequently stated in a letter to Ron Woods of the Public Service Commission dated June 17, 1991, that

> the reason for this change [in payee to Missoula Water Works] is so that the Internal Revenue Service cannot interrupt the cash flow stream from the water system customers pursuant to a tax lien that they have filed against Valley West Water Company.

On June 6, 1991, partial summary judgment in this action was granted by the District Court in favor of Crowley, giving him a money judgment in the amount of $32,818.31 for contract damages and attorney's fees of $6,000.00, the total of $38,818.31 to accrue interest at 12 percent.

4

Although Valley West was involuntarily dissolved by the Secretary of State as of February 28, 1985, it has continued to operate in a corporate capacity by holding itself out as a corporation and doing business under its former name. In fact, Valley West requested approval from the Public Service Commission and was granted a rate increase under that name in 1990. According to Ron Woods of the Public Service Commission, the assets of Valley West, including the rights under the Agreement with the City of Missoula, still remain with Valley West, and would so remain unless and until a transfer request was submitted and approved by that entity. Nonetheless, Missoula Water Works collected the accounts for Valley West for water services beginning in June 1991.

In addition, Valley West and Missoula Water Works both use the same telephone numbers and addresses in Missoula and in Phoenix, Arizona, which is also Isaly's mailing address. The District Court determined that the intermingling of names, addresses and telephone numbers and the status of Isaly as general partner and president indicated that Isaly's actions on behalf of the entities in question constitute an effort to avoid legitimate creditors' claims and that Isaly seemed to control all of the entities, including R Montana, Inc. Further, the court determined that the transactions were undertaken with little or no attention to the requirements of Montana law in regulating corporations, particularly private utility companies, or to the legitimate interest of creditors, including the IRS and the plaintiff. Payments have gone to Isaly at the same address in Phoenix both before and after the name

5

change.

Because Valley West's major asset, the water system operating rights, had been transferred to Missoula Water Works and then leased back to Valley West, Crowley was unable to collect the money due him from Valley West. On September 5, 1991, Crowley moved the District Court to appoint a receiver to administer assets of Valley West, Missoula Water Works and R Montana, Inc. The court determined that immediate action needed to be taken to prevent irreparable damage to Crowley by virtue of the transfers of assets between entities. The District Court granted Crowley's motion on October 22, 1991, stating:

> For the Court to allow the continuance of the transfer during the litigation would produce great and irreparable injury to Plaintiff Crowley, due to the lack of other assets and the dissolved status of Defendant Valley West Water Company. Furthermore, it appears that during the course of the litigation, Defendant Valley West Water Company, through Mr. Isaly, is undertaking transfers in violation of the rights of a judgment lien creditor, respecting the subject of this action which would tend to render Plaintiff Crowley's Judgment ineffectual if concluded; such conduct consists in the removal or disposition of Valley West Water Company's property from the State of Montana with the stated purpose of avoiding legitimate creditor's [sic] claims. Pecuniary compensation would not afford adequate relief to the Plaintiff under the circumstances.

This appeal concerns only the appointment of a receiver in this action. Valley West filed an application to stay the order appointing a receiver on October 30, 1991, which was subsequently denied by the District Court.

Defendants Missoula Water Works and Valley West have filed petitions for bankruptcy in the United States Bankruptcy Court for the District of Arizona. Valley West filed a Chapter 7 bankruptcy

6

petition on January 17, 1992, and Missoula Water Works, as debtor and debtor in possession, initiated a Chapter 11 bankruptcy reorganization in April 1993. Crowley moved for and was granted temporary lifting of the stay in the Valley West Chapter 7 proceeding pending resolution of the Montana District Court action on April 5, 1993. Missoula Water Works initiated its Chapter 11 proceeding later the same month. After more than two years of proceedings in state court including the removal of both bankruptcy stays in the Arizona Bankruptcy Court, Missoula Water Works removed this case to federal district court. On March 7, 1994, Judge Lovell remanded the case to state court and this appeal followed.

## Did the District Court err in appointing a receiver to handle the assets of defendants?

Valley West contends that the District Court erred in appointing a receiver because Crowley failed to show that his claim of fraudulent conveyances is probable of succeeding at trial or that Valley West has any interest in the operating rights under the agreement with the City of Missoula. According to Valley West, because the propriety of the receivership hinges upon the validity of Crowley's claim for fraudulent conveyances, Crowley must show that he will prevail on that claim. Therefore, Valley West contends that the court should not have appointed the receiver nor ordered that the receiver set aside the 1982 sales. Although they are not in agreement about the probability of success concerning the claim for fraudulent conveyances, both Valley West and Crowley agree that there is a genuine issue of material fact here

7

concerning the statute of limitations for fraud. The issue involves the application of the "discovery doctrine" to the facts of this case.

An order appointing a receiver is immediately reviewable by this Court pursuant to Rule 1(b)(2), M.R.App.P. However, any other findings and conclusions reached by the District Court in this case are not reviewable at this time. Thus our review is limited in scope to only such evidence as was relied on by the District Court to reach the conclusion that a receiver be appointed. Our standard of review for discretionary trial court rulings is abuse of discretion. Steer Inc. v. Department of Revenue (1991), 245 Mont. 470, 475, 803 P.2d 601, 603-04.

District courts in Montana have statutory authority to appoint receivers. Section 27-20-102, MCA, governs the appointment of a receiver and provides in pertinent part:

> **27-20-102. When and by whom receiver appointed.** A receiver may be appointed by the court in which an action is pending or by the judge thereof:
>
> (1) in an action . . . by a creditor to subject any property or fund to his claim . . . on the application of the plaintiff or of any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured;
>
> . . . .
>
> (3) after judgment, to carry the judgment into effect; . . .

Section 27-20-102, MCA, remains virtually unchanged since it was originally enacted and provides for specific instances where a receiver may be appointed. It also continues the common law of

8

courts of equity in instances where receivers had been appointed prior to February 1, 1864. See § 27-20-102(5), MCA. For those instances where the petition to appoint a receiver is based upon statute, as here, § 27-20-102(1), MCA, explains what must be shown by the petitioner. The plaintiff must have a probable right to or interest in the property or fund or proceeds thereof and the property or fund must be in danger of being lost, removed, or materially injured.

Prior Montana cases concerning receivership emphasize that the power to appoint a receiver is to be exercised sparingly and not as a matter of course. Further, a strong showing must be made and even then, that power is to be exercised with conservation and caution. See, e.g., Little v. Little (1951), 125 Mont. 278, 234 P.2d 832. A receiver is appointed in a matter pending litigation to preserve and manage property prior to a decision on the merits of the litigation.

A receiver cannot be appointed in an action merely for the purpose of collecting a judgment debt. Little, 234 P.2d at 835. Thus, if Crowley was merely a judgment creditor as argued by Valley West, he could not use the remedy of receivership to protect his interests. In this case, the matter is not that of a simple judgment debt, but it is a judgment debt for which a lien attached to the actual property which is the substance of the alleged fraudulent transfer. Crowley's allegation of fraud concerning the multiple transfers of that asset remains to be litigated.

The District Court determined that Crowley had demonstrated

sufficient evidence to establish a prima facie case for fraud and further ruled that there are genuine issues of material fact as to whether the two-year limitation for an action alleging fraud had been tolled by the "discovery doctrine." These issues cannot be reviewed by this Court until a final judgment is reached on their merits. Until that issue is resolved, without a receivership, customer payments would continue to be made to Missoula Water Works at the address in Arizona which is also the address for Charles Isaly, the alleged perpetrator of the fraud.

This Court has held that a receivership is justified where there is a fraudulent appropriation of partnership funds, together with the probability of insolvency and the danger that money in which plaintiffs have an interest will ultimately be lost to them. The purpose of the receivership in such a case is to prevent the partner at fault from dissipating the property and thereby defeating the objective of the ancillary suit. Stoner v. Hannan (1942), 113 Mont. 210, 223, 127 P.2d 233, 236-37. It is a general rule that, aside from statutory provisions, in order to obtain the appointment of a receiver, the plaintiff "must show that the possession of the property by defendant was obtained by fraud, or that the property itself, or the income arising from it, is in danger of loss from neglect, waste, misconduct, or insolvency," particularly where the defendants control the property under a claim of right. 75 C.J.S. Receivers § 18 (1952). This Court has followed the general rule holding that a receiver will not be appointed if there is another way to protect the property in

10

question or otherwise achieve the desired outcome.  See State ex rel. Larry C. Iverson, Inc. v. District Court (1965), 146 Mont. 362, 371, 406 P.2d 828, 833.

Applying § 27-20-102, MCA, together with the general rule as previously applied to other Montana cases on receivership, to the record before us, we conclude that the District Court properly appointed a receiver in this case.  The record discloses that both Valley West and Missoula Water Works have filed bankruptcy petitions in Arizona and the United States Bankruptcy Court for the District of Arizona has lifted the stays in those proceedings for the purpose of allowing the resolution of this litigation to proceed.  The filing of those petitions infers representations of insolvency by Isaly on behalf of both Missoula Water Works and Valley West.  Payments from some 225 water customers totalling approximately $7,000 per month were directed, pursuant to a letter by Isaly in June of 1991, to be paid to Missoula Water Works in Arizona rather than to Valley West, and the income stream is thus being diverted out of Montana.  Isaly's letter was written within days of the judgment in the District Court in favor of Crowley against Valley West.

In addition, Valley West and Missoula Water Works have delayed the resolution of this case by filing bankruptcy petitions and by removing the case to federal district court in Montana.  Crowley has already been injured by the necessity of responding to these actions on the part of defendants and is in danger of further injury if a receiver is not appointed to administer the assets of

11

these entities until such time as the District Court reaches its decision on the merits. Contrary to the position taken by Valley West, it is not necessary that plaintiff show that he is absolutely, conclusively, or incontrovertibly entitled to the relief he has asked for; it is sufficient that he appears to have reasonable expectations of succeeding, that there is a showing of a reasonable probability of ultimate success, or that his right to a judgment is probable. This is particularly so when the plaintiff has a lien on or interest in the fund in the hands of the defendant. 75 C.J.S. Receivers § 11 (1952).

Crowley's interest in Valley West's assets is not in controversy here. However, the major asset of Valley West was transferred to R Montana, Inc. and then to Missoula Water Works and then leased-back to Valley West all in the same day in 1982. Although Crowley knew that Valley West was going to attempt a sale of assets, his testimony indicates he had no reason to participate in or to question the actual sales that subsequently occurred. He continued to receive payments through the escrow agent and testified to his belief that his security interest in Valley West's assets was intact. Valley West continued to collect accounts receivable until the time Crowley was granted a judgment against Valley West in June of 1991 when Isaly directed that payments be made from that time onward to Missoula Water Works instead of to Valley West, but continued to operate in the same manner in all other respects.

An affidavit signed by Isaly indicates that the limited

12

partnership was established as an attempt to create a tax advantage pursuant to a tax loophole which was later extinguished under the 1986 Tax Reform Act. Isaly did not obtain approval for any of the transfers from the Public Service Commission. He did, however, write to the Commission in 1991 to explain the change in payee for customer accounts to Missoula Water Works as an attempt to evade an IRS lien on Valley West's cash flow. He also added an addendum to the lease agreement between Missoula Water Works and Valley West to change the terms of the lease to reflect the change in payee, explaining the purpose as one of avoiding execution on assets by judgment creditors. Crowley is the only demonstrated judgment creditor, according to the record. This demonstrates that the major asset, the water system operating rights, is in danger of loss, removal or material injury.

Valley West also contends that, to be "probable," Crowley must show that his claims are not time-barred. The District Court's decision states there are genuine issues of material fact regarding tolling of the statute of limitations. This threshold issue also remains to be decided and no more probable showing can be made at this point than a demonstration of facts--already made here--that defeat a motion for summary judgment on the issue. We conclude the facts relied on by the District Court, which are in the record at this point, are sufficient without further proof to support the court's appointment of a receiver for the reasons stated by the District Court and restated in this opinion.

We hold the District Court did not abuse its discretion by

13

appointing a receiver in this case.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

14

October 13, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


George Curtis DeVoe
Attorney at Law
310 N. Higgins
Missoula, MT 59802

Christopher B. Swartley
Datsopoulos, MacDonald & Lind
201 W. Main, Ste. 201
Missoula, MT 59802


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy