DA 10-0070

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 237

BRYAN SANDROCK, Individually and as Sole
Operating Member of THE TRAIN STATION, LLC,
a Montana Limited Liability Company,

      Plaintiffs and Appellees,

   v.

KEVIN DeTIENNE, Individually and as a Sole
Operating Member of THE MONEY TRAIN, LLC,
a Montana Limited Liability Company,

      Defendants and Appellants,

JOHN SEDMINIK, JR., Subtenant,

      Defendant.

APPEAL FROM:    District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. CDV 09-1105
                    Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Stefan T. Wall, McMahon Law Firm, PLLC; Helena, Montana

      For Appellees:

          Gregory A. Van Horssen, Keller, Reynolds, Drake, Johnson & Gillespie,
          P.C.; Helena, Montana

Submitted on Briefs:  September 15, 2010

Decided:  November 9, 2010

Filed:

_____
                  Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Defendants Kevin DeTienne and The Money Train, LLC (collectively, "Money Train") appeal from the order entered by the First Judicial District, Lewis and Clark County, converting a temporary restraining order against Money Train to a preliminary injunction. We affirm. We state the issue as follows:

¶2 ***Did the District Court manifestly abuse its discretion in entering a preliminary injunction against Money Train?***

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In August 2007, Plaintiff The Train Station, LLC, as landlord, and Money Train, as tenant, entered into a 15-year commercial real property lease, which was later revised in June 2008. Plaintiff Bryan Sandrock (Plaintiffs collectively, "Train Station") and DeTienne acted as signatories on the lease for Train Station and Money Train, respectively. DeTienne is the sole member of The Money Train. The lease property is a building owned by Train Station in which Money Train operated a casino/liquor establishment. Under the lease, rent was due on the first day of each month, delivered to the address of Train Station. Rent began at the rate of $9,525 per month and increased by 3% annually, in September. If rent was not paid in full on or before the 10th day of the month, a late charge and interest were assessed against the tenant. The lease further provided that:

> In the event of any breach of this Lease by Tenant, then Landlord, in addition to other rights or remedies it may have, *shall have the immediate right of re-entry* and may remove all persons and property from the premises . . . . Should Landlord elect to re-enter as herein provided or should it take possession pursuant to legal proceedings or pursuant to any

2

notice provided for by law, *it may either terminate this Lease* or . . . re-let said premises . . . upon such other terms and conditions as Landlord in its sole discretion may deem advisable . . . . [Emphasis added.]

¶4 In August 2009, Money Train withheld $1,000 of the monthly rent due to Train Station. On August 18, 2009, Sandrock sent a letter and e-mail to DeTienne notifying him of the deficiency in rent and assessing a late fee and interest. In September 2009, the rent increased by 3% as scheduled in the lease, and Money Train withheld $1,295 of rent. Sandrock sent another letter and e-mail to DeTienne, notifying him of the deficiency and assessing another late fee. In October 2009, legal counsel for Train Station sent notice to Money Train's legal counsel acknowledging receipt of $2,000 from Money Train toward rent due in August and September, but noted continuing deficiencies, including for the September and October rent, unpaid late fees and interest. The total deficiency was then stated as $2,677.35, and demand for immediate payment was made.

¶5 On November 13, 2009, Train Station's counsel sent a notice of default to Money Train's counsel regarding the full November rent, stating "I understand from your recent letter that your client, Kevin DeTienne, has unilaterally decided that he may make rent payments to the Vibeke DeTienne Trust in lieu of payments to the landlord, Train Station, LLC," and observed that the lease "makes no arrangements for this type of payment and . . . it is quite likely that [Train Station] will be in default" on its mortgage obligation. The letter demanded full payment of all rents due and owing and stated that if the amounts were not paid by "November 23, 2009, the lease will be terminated."

3

¶6     On November 26, 2009, having not received the rents, Sandrock entered the premises, changed the locks in the building and posted signs of eviction. The following day, DeTienne reentered the building and reopened his business.

¶7     On November 30, 2009, Train Station filed an action for rent and to evict Money Train and subtenants from the premises, confirm that the lease had been terminated, and award damages and costs. Concurrently, Train Station sought a temporary restraining order ("TRO") and temporary injunction supported by an affidavit from Sandrock requesting that the District Court order Money Train to vacate the property and be restrained from conducting further business operations. Sandrock's affidavit alleged, inter alia, that the amounts due under the lease totaled $17,356.91, he had provided notice, DeTienne had broken into the premises after Sandrock reentered the building in accordance with the terms of the lease, and the mortgage on Train Station's property would go into default if Money Train remained on the premises without paying rent. The court granted the TRO and set a show cause hearing for December 22, 2009, which was ultimately continued to January 5, 2010. DeTienne was personally served with the TRO on December 1, 2009, and has not since attempted to reenter the building.

¶8     At the hearing, DeTienne challenged the ownership structure of The Train Station and its authority to bring the action. Sandrock testified that he was formerly a member of Train Station with Vibeke DeTienne, DeTienne's mother, but that he currently believed he was the sole member of Train Station based on disassociation of Vibeke's interest upon her death under Train Station's amended operating agreement. In contrast,

4

DeTienne testified that he believed the Vibeke DeTienne Trust ("Trust") held Vibeke's interest in Train Station and that, as sole trustee of the Trust, he had not consented to the actions taken by Sandrock. DeTienne testified to other issues that had arisen between Sandrock and DeTienne and his belief that the lease was unfair.

¶9 DeTienne testified that he initially withheld rent in response to Sandrock's delay in approving a proposed sublease arrangement. He further testified that he paid the November rent to the Trust because of Sandrock's actions. An internet bank statement for the Trust admitted at the hearing reflected that undesignated amounts totaling $12,330 had been paid into the Trust's account on November 6, November 19, and November 25, 2009. Sandrock testified that Train Station was never authorized to receive or access these amounts.

¶10 Testimony was offered indicating that rent paid to Train Station was essential for paying its mortgage on the building. Sandrock testified that Train Station's cash had been entirely expended for legal fees, and he had personally loaned money to the business to stay current "in the hopes that we can get another tenant who can demonstrate an ability to pay on time." He further testified that he had received many inquiries on purchasing or leasing the property and believed re-leasing the property would be possible within a period of three to six months.

¶11 The District Court issued findings of fact and conclusions of law ordering that the TRO be converted into a preliminary injunction prohibiting DeTienne from entering the subject property pending a decision on the merits or further order. Money Train appeals.

5

**STANDARD OF REVIEW**

¶12 An order granting an injunction is immediately appealable, notwithstanding the fact that the merits of the controversy remain to be determined. M. R. App. P. 6(3)(e).

¶13 A district court's decision to grant or deny a preliminary injunction is " 'largely within the discretion of the district court.' " *Pinnacle Gas Resources, Inc. v. Diamond Cross Props., LLC*, 2009 MT 12, ¶ 12, 349 Mont. 17, 201 P.3d 160 (quoting *Yockey v. Kearns Props., LLC*, 2005 MT 27, ¶ 12, 326 Mont. 28, 106 P.3d 1185). We will only disturb a district court's decision to grant or deny a preliminary injunction upon a showing of manifest abuse of discretion. *Cole v. St. James Healthcare*, 2008 MT 453, ¶ 9, 348 Mont. 68, 199 P.3d 810 (citing *Sweet Grass Farms, Ltd. v. Bd. of Co. Comm'rs of Sweet Grass Co.*, 2000 MT 147, ¶ 20, 300 Mont. 66, 2 P.3d 825). " 'A manifest abuse of discretion is one that is obvious, evident, or unmistakable.' " *Pinnacle Gas*, ¶ 12 (quoting *Yockey*, ¶ 12). Preliminary injunctions do not resolve the merits of the case, *Benefis Healthcare v. Great Falls Clinic, LLP*, 2006 MT 254, ¶ 19, 334 Mont. 86, 146 P.3d 714 (citing *Yockey*, ¶ 18), and our analysis "is not intended to express and does not express any opinion about the ultimate merits" of the underlying case. *Benefis*, ¶ 19. In addition, we review a district court's conclusions of law for correctness. *Pinnacle Gas*, ¶ 12 (citing *Yockey*, ¶ 12).

6

## DISCUSSION

¶14 ***Did the District Court manifestly abuse its discretion in entering a preliminary injunction against Money Train?***

¶15 Money Train makes four arguments in challenging the District Court's issuance of a preliminary injunction. Money Train contends that the evidence did not justify granting the injunction, as Train Station failed to make a showing that it would prevail on the merits or that irreparable injury would result without an injunction. Second, Money Train argues that the District Court erred by ordering injunctive relief on the issue of right or title to real property. Third, Money Train argues that the court erred by making a decision on the merits of the case and, lastly, by failing to appoint a receiver to manage rents. Train Station counters that the court's use of injunctive relief was adequately supported by the evidence, necessary and appropriate in this lease case, did not decide the merits, and was not a manifest abuse of discretion.

¶16 Preliminary injunctions are governed by § 27-19-201, MCA, which sets forth in five separate subsections the grounds upon which an injunction may be granted. Arguments offered to the District Court were directed toward subsections (1) and (2), which provide an injunction may be granted:

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant; . . . .

Section 27-19-201(1) and (2), MCA. The subsections of the statute are disjunctive, and thus "only one subsection need be met for an injunction to issue." *Sweet Grass*, ¶ 27 (citing *Stark v. Borner*, 226 Mont. 356, 359-60, 735 P.2d 314, 317 (1987)). For an injunction to issue under § 27-19-201(1), MCA, an applicant must show that he "has a legitimate cause of action, and that he is likely to succeed on the merits of that claim," *Cole*, ¶ 15 (citing *Benefis*, ¶ 22; *M.H. v. Mont. High Sch. Ass'n*, 280 Mont. 123, 135, 929 P.2d 239, 247 (1996)), as well as demonstrating that an injunction is an appropriate remedy. *Cole*, ¶ 15. We have explained that " '[a]n applicant for a preliminary injunction must establish a prima facie case, or show that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated.' " *Benefis*, ¶ 14 (quoting *Porter v. K & S Partnership*, 192 Mont. 175, 181, 627 P.2d 836, 839 (1981)). Upon the requisite showing, a preliminary injunction is issued to maintain the status quo pending trial, which has been defined as " 'the last actual, peaceable, noncontested condition which preceded the pending controversy.' " *Cole*, ¶ 25 (quoting *Benefis*, ¶ 14). It is the court's duty " 'to minimize the injury or damage to all parties to the controversy.' " *Cole*, ¶ 25 (quoting *Benefis*, ¶ 14). Money Train argues that these standards for issuance of a preliminary injunction were not satisfied by the evidence and that the District Court failed to preserve the status quo.

¶17 Train Station brought an action to evict Money Train from the premises and to declare that the parties' commercial lease had been terminated. The lease stated that "[i]n the event of any breach of this Lease by Tenant," landlord Train Station "shall have the

8

immediate right of re-entry" and "may . . . terminate this Lease . . . ." Evidence presented at the hearing indicated that full rent and late fees and interest provided by the lease agreement and delineated in Train Station's letters and notices had not been paid by Money Train to Train Station. The lease provided for rental payments to be made to Train Station's address, and thus Money Train's purported rent payment to the Trust did not appear to conform with this provision. In this regard, the District Court entered a finding of fact that:

> 16. . . . DeTienne presented a copy of a bank statement dated December 14, 2009, showing deposits to The Trust of Vibeke B. DeTienne . . . . However, no evidence was presented that the deposits were earmarked for rent payments to Train Station pursuant to the terms of the lease. Further, there was no evidence presented that Sandrock or Train Station ever had access to the funds for satisfaction of the rent obligations.

The court concluded that, while further proceedings may demonstrate a justification for DeTienne's actions regarding the rent, "the record before the Court at this point demonstrates that DeTienne made a conscious choice to disregard the clear terms of the lease with respect to the manner and amounts of rent payment."

¶18 Other evidence at the hearing indicated that receipt of the rental income from Money Train was essential in order for Train Station to stay current on its own mortgage obligation on the property. This evidence was largely undisputed; DeTienne himself responded "[a]bsolutely" to a question asking him whether Money Train's failure to pay rent to Train Station during the course of litigation would put Train Station's mortgage in jeopardy. The District Court also noted that this property was the sole asset held by Train Station.

9

¶19 Although referencing § 27-19-201, MCA, only generally, the District Court apparently concluded, based upon the evidence and arguments before it, that Train Station was likely to succeed on its claim of breach of the lease and that Money Train's actions with regard to rent payments would produce irreparable harm to Train Station under subsections (1) and (2) of the statute. Although Money Train contends that Train Station had no standing or authority to maintain this action, the District Court was clearly concerned that Money Train's actions appeared to be directly contrary to the terms of the agreement, and concluded that denial of an injunction to allow "DeTienne to re-enter the premises at this time will be a violation of the landlord's rights as set forth in the subject lease — specifically the landlord's right to re-enter and re-let the premises." We give "great deference" to a district court's factual findings in ruling on preliminary injunctions. *Cole*, ¶ 22 (citing *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, 82 P.3d 912). Here, there was evidence to support the District Court's findings and its implicit conclusion that "it *appears* that the applicant is entitled to the relief demanded." Section 27-19-201(1), MCA (emphasis added). The parties strongly dispute which state of affairs constituted the status quo—"the last actual, peaceable, noncontested condition"—to be preserved, *Cole*, ¶ 25 (internal quotation marks omitted), but we cannot disagree with the District Court's assessment that it was Money Train's actions which had disrupted the flow of rent over a several month period and left Train Station without agreed-upon revenues upon which it was dependent to satisfy its own obligations on the property.

¶20 Money Train contends that the District Court incorrectly concluded that *Erickson v. Hart*, 231 Mont. 7, 750 P.2d 1089 (1988), did not preclude injunctive relief. *Erickson* cited the rule that " 'title to, or right of possession of real estate may not be litigated in an action for an injunction.' " *Erickson*, 231 Mont. at 9, 750 P.2d at 1091 (quoting *Eliason v. Evans*, 178 Mont. 212, 218, 583 P.2d 398, 402 (1978)); *see also Jefferson County v. McCauley Ranches, LLP*, 1999 MT 333, ¶ 17, 297 Mont. 392, 994 P.2d 11; *Davis v. Burton*, 126 Mont. 137, 139, 246 P.2d 236, 237 (1952); *Gibbons v. Huntsinger*, 105 Mont. 562, 574, 74 P.2d 443, 449 (1937); *National Bank v. Bingham*, 83 Mont. 21, 35, 269 P. 162, 167 (1928). This principle parallels and has been cited in conjunction with the principle that, in considering preliminary injunctions, "courts 'should in no manner anticipate the ultimate determination of the questions of right involved.' " *Cole*, ¶ 13 (quoting *Sweet Grass*, ¶ 38); *Jefferson County*, ¶ 17 (citing *National Bank*, 83 Mont. at 35, 269 P. at 167; *Knudson v. McDunn*, 271 Mont. 61, 65, 894 P.2d 295, 298 (1995)); *see also Eliason*, 178 Mont. at 218, 583 P.2d at 402.

¶21 *Erickson* involved a dispute over a mobile home park which had been purchased by way of a "contract for deed," under which the contract buyer had defaulted. *Erickson*, 231 Mont. at 8, 750 P.2d at 1090. The seller brought an action in the nature of a foreclosure of the contract, seeking possession of the property and rents collected. *Erickson*, 231 Mont. at 8, 750 P.2d at 1090. The district court issued a restraining order granting possession of the property to seller without addressing buyer's pending motion for substitution of judge. *Erickson*, 231 Mont. at 9, 750 P.2d at 1091. This Court

reversed the order for lack of jurisdiction, but stated in dicta that "[w]e disapprove of testing title to of [sic] real property by injunction or restraining order pending the outcome of litigation. . . . 'The general rule is that title to, or right of possession of real estate may not be litigated in an action for an injunction.' " *Erickson*, 231 Mont. at 9, 750 P.2d at 1091 (internal citations omitted) (quoting *Eliason*, 178 Mont. at 218, 583 P.2d at 402).

¶22 The general rule stated by *Erickson* that title or possession of property should not be decided by injunction pending the outcome of litigation did not preclude the District Court from enjoining Money Train from interfering with Train Station's exercise of a non-judicial, contractual remedy. The parties' lease agreement provided that "[i]n the event of any breach of this Lease by Tenant," Train Station "shall have the immediate right of re-entry" and that "it may . . . terminate this Lease . . . ." Upon the District Court's preliminary determination that Money Train had "made a conscious choice to disregard the clear terms of the lease" regarding rent payment, its decision to enjoin Money Train from frustrating the agreed-upon remedy, on which Train Station's revenues depended, was within its discretion.

¶23 Money Train argues that the District Court erred by reaching the merits in the course of ordering injunctive relief. We have repeatedly held that courts considering preliminary injunctions " 'should in no manner anticipate the ultimate determination of the questions of right involved.' " *Cole*, ¶ 13 (quoting *Sweet Grass*, ¶ 38). Rather, "findings and conclusions directed toward the resolution of the ultimate issues are

12

properly reserved for trial on the merits." *Yockey*, ¶ 18 (citing *Porter*, 192 Mont. at 183, 627 P.2d at 840). We have often admonished district courts for rendering decisions on the merits in ruling on preliminary injunctions. *City of Whitefish v. Bd. of Co. Comm'rs of Flathead Co.*, 2008 MT 436, ¶¶ 17-18, 347 Mont. 490, 199 P.3d 201; *Benefis*, ¶ 32; *Yockey*, ¶ 20; *Knudson*, 271 Mont. at 66, 894 P.2d at 298; *see also Eliason*, 178 Mont. at 218, 583 P.2d at 402.

¶24 Money Train's position is largely premised on what it describes as the "*merits argument* regarding substantive provisions of the lease" Train Station made to the District Court. (Emphasis added.) However, despite any of Train Station's arguments, the District Court was careful to state, both during the hearing and in its order, that it was reserving judgment on the ultimate issues of the case. Money Train fails to identify any language within the court's order which improperly reached the merits of an issue. Upon return of this matter to the District Court, the case may continue without any prejudice to the ultimate resolution of the issues which have been pled.

¶25 Lastly, Money Train contends that the court erred in failing to appoint a receiver for the property as authorized by § 27-20-102, MCA. Challenging Train Station's authority to bring this action and to receive rents, Money Train asked the court to appoint a receiver "to collect rent and, in turn, pay the mortgage, taxes, and insurance." We review a court's decision regarding appointment of a receiver for abuse of discretion. *See Crowley v. Valley W. Water Co.*, 267 Mont. 144, 150, 882 P.2d 1022, 1025 (1994) (citing *Steer, Inc. v. Dep't of Revenue*, 245 Mont. 470, 475, 803 P.2d 601, 603-04 (1990)).

13

However, the law provides substantial precautionary limits on the appointment of a receiver. We have emphasized that "the power to appoint a receiver is to be exercised sparingly and not as a matter of course. Further, a strong showing must be made and even then, that power is to be exercised with conservation and caution." *Crowley*, 267 Mont. at 150, 882 P.2d at 1026 (citing *Little v. Little*, 125 Mont. 278, 234 P.2d 832 (1951)). Generally, "a receiver will not be appointed if there is another way to protect the property in question or otherwise achieve the desired outcome." *Crowley*, 267 Mont. at 151, 882 P.2d at 1026 (citing *State ex rel. Larry C. Iverson, Inc. v. District Court*, 146 Mont. 362, 371, 406 P.2d 828, 833 (1965)). The party seeking the appointment of a receiver must generally demonstrate the property was obtained by fraud or "is in danger of loss from neglect, waste, misconduct, or insolvency." *Crowley*, 267 Mont. at 151, 882 P.2d at 1026 (citation omitted). We conclude that the court did not abuse its discretion in failing to appoint a receiver as the facts do not appear to satisfy the standards for such an appointment.

¶26 We conclude the District Court did not manifestly abuse its discretion and affirm the issuance of the preliminary injunction. This matter may proceed on the merits before the District Court.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

14