DA 19-0450

FILED

05/26/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 136N

360 RECLAIM, LLC, a Montana limited liability company,

      Plaintiff and Appellee,

    v.

WILLIAM M. RUSSELL, an individual,
and MOUNTAIN VIEW INVESTMENTS, L.C.,
an Idaho limited liability company,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 2019-473C
Honorable Heidi Ulbricht, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          William Merrill Russell, Self-represented, Dubois, Idaho

          Nicholas J. Lofing, Garlington, Lohn & Robinson, PLLP,
Missoula, Montana
(for Mountain View Investments)

      For Appellee:

          Bruce A. Fredrickson, Kristin L. Omvig, Rocky Mountain Law
Partners, P.C., Kalispell, Montana

Submitted on Briefs:  March 4, 2020
Decided:  May 26, 2020

Filed:

          _____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 William M. Russell (Russell) and Mountain View Investments, L.C. (Mountain View), challenge the preliminary injunction entered by the Eleventh Judicial District Court, Flathead County, enjoining Russell from entering upon, accessing, or possessing the Scrap Yard subject to this action during the pendency of these proceedings.[1]

¶3 The real property at issue, a twenty-acre parcel near Columbia Falls, Montana, (Scrap Yard, or Property) has a long litigation history. The extensive background of the foreclosure proceeding leading to the present dispute has been set forth in prior decisions of this Court, *see KS Ventures, LLC v. Russell*, 2019 MT 4N, ¶¶ 3-8, 395 Mont. 519, 432 P.3d 715 (*KS Ventures*), and *Russell v. 360 Reclaim, LLC*, 2019 MT 178N, ¶¶ 3-5, 397 Mont. 552, 455 P.3d 441 (*360 Reclaim I*), and will not be repeated except as necessary to resolve this appeal. Also, after a hearing on the request for preliminary injunction, the District Court entered findings of fact and conclusions of law that it explained "may be rebutted at a final trial or hearing on the merits."

---

[1] The parties filed separate appeals, and upon an unopposed motion, this Court entered an order herein consolidating the appeals under No. DA 19-0450. *See Order Granting Joint Motion to Consolidate*, entered October 10, 2019.

¶4      In May 2016, KS Ventures, LLC, the Plaintiff in *KS Ventures*, initiated a foreclosure proceeding and requested that the successful purchaser at the Sheriff's sale be granted possession of the Property during the redemption period. *KS Ventures*, ¶ 7. Judgment was granted to KS Ventures by the District Court. Russell appealed, and we affirmed. On June 1, 2018, the Sheriff's Sale was held and Appellee 360 Reclaim purchased the Scrap Yard. *KS Ventures*, ¶ 8. The decree of foreclosure provided that the successful purchaser at Sheriff's Sale would be entitled to possession of the Scrap Yard during the redemption period, commencing ten days following the sale, and 360 Reclaim notified Russell on the date of the sale of its intent to assume possession of the Scrap Yard ten days following the sale, as provided in the decree, which it did. *360 Reclaim I*, ¶ 3.[2]

¶5      Also on June 1, 2018, the date of the Sheriff's Sale, the Flathead County Zoning and Planning Office hand delivered a "Notice of Violation and Order of Abatement – Re-Issued" to 360 Reclaim, notifying it that the Scrap Yard was in violation of Flathead County Ordinance No. 6, which prohibits the maintenance of a public nuisance, and demanding that the property be brought into compliance. The Scrap Yard had been in violation of the ordinance for several years under Russell's ownership, and Russell was prosecuted and convicted under the Ordinance. Evidence indicated that Russell's personal

---

[2] As we explained in *360 Reclaim I*, while the appeal in *KS Ventures* was pending, "Russell filed this separate action in the District Court seeking possession of the property based on a number of statutory rights. 360 Reclaim moved the District Court to dismiss the matter under M. R. Civ. P. 12(b)(6). The District Court held that Russell's claims were barred by collateral estoppel, reasoning that the rights Russell alleged entitled him to possession were identical to those in *KS Ventures, LLC* appeal." *360 Reclaim I*, ¶ 5.

property items located on the Property included, among other things, approximately 50 junk vehicles, approximately 50 crushed mobile homes, more than 45 large trailers filled with miscellaneous personal property items, more than 2,000 crushed wood pallets, approximately 30,000 tires, 9 forklifts, wood piles, garbage, and tons of miscellaneous scrap. 360 Reclaim served Russell with a "Notice to Vacate Real Property," including a demand that he remove his personal property, and advising Russell that 360 Reclaim would begin to clean up and remove his property within 15 days of Russell's release from the Flathead County Detention Center, which occurred on June 2, 2018, and would charge Russell $500 per day storage fees for his personal property items in the Scrap Yard. Evidence was offered that 360 Reclaim has attempted to resolve the violations of Flathead Ordinance No. 6 and has performed work and provided services to preserve and protect the Scrap Yard and Defendant Russell's personal property at 360 Reclaim's expense. Effective July 16, 2018, upon notice to Russell, 360 Reclaim increased the storage rental value of the personal property and associated fees from $500 per day to $1,000 per day. The District Court found that "[t]here is evidence that 360 Reclaim repeatedly warned and notified Russell that storage fees were being charged for storing his personal property." 360 Reclaim has asserted an agister's lien arising from these storage costs, and Russell has not paid them. On April 9, 2019, Russell filed an action for declaratory relief, in Flathead County District Court, *William M. Russell v. 360 Reclaim, LLC, et al.*, DV-2019-305(B), styled "Complaint for Emergency Declaratory Relief." In this action, 360 Reclaim

4

4

counterclaimed to enforce and foreclose its agister's lien for the costs of storing Russell's personal property.[3]

¶6 On June 3, 2019, the Sheriff executed a Sheriff's Deed granting title of the Property to 360 Reclaim. On the same day, Russell attempted to redeem the Property by wiring funds in the amount of $117,000 to 360 Reclaim's counsel's trust account. 360 Reclaim had provided Russell with a redemption statement indicating its calculation of the amount necessary for redemption, including storage and property costs and the taxes due on the real property taxes for the Property that were due on May 31, 2019, and which 360 Reclaim paid. 360 Reclaim contended the redemption amount as of May 31, 2019 was $486,959.77. The District Court simply found that "360 Reclaim has provided evidence supporting its assertion that the total amount to redeem the property was greater than $117,000.00," the amount offered by Russell. Russell has acknowledged that he did not provide an affidavit or certified copy of the judgment under which he claimed the right to redeem. Section 25-13-807, MCA. Russell filed a Notice of Redemption in which he did not disclose 360 Reclaim's asserted lien for storage fees and property protection costs, and apparently did not serve it upon 360 Reclaim. 360 Reclaim asserts the redemption period expired on June 1, 2019, which rendered Russell's redemption untimely in any event.

---

[3] We do not have the record of this action before us in this appeal. From references made in the District Court's order entered herein, Russell is apparently challenging aspects of 360 Reclaim's handling of the property.

5

¶7 The District Court found that Russell broke into the Scrap Yard on June 3, 2019. On June 4, 2019, 360 Reclaim filed a "Verified Emergency Petition and Application for Temporary Restraining Order, Preliminary Injunction and Order to Show Cause," and a "Verified Petition/Complaint to Declare Alleged Redemption Invalid," with an Interpleader of the funds wired by Russell. After a hearing, the District Court entered a preliminary injunction enjoining Russell or his agents from accessing the Scrap Yard or harassing, intimidating, or otherwise disturbing 360 Reclaim's peaceful possession of the Scrap Yard during the pendency of this action. The District Court found that a sufficient case had been made that the cost to redeem the Scrap Yard was greater than that amount Russell paid to redeem it; that Russell did not substantially comply with statutory redemption procedures; and that entering a preliminary injunction would preserve the status quo and prevent irreparable harm to 360 Reclaim. Russell and Mountain View appeal and argue that the District Court made legal errors in the standards governing application of the foreclosure redemption statutes, set forth at § 25-13-801, MCA, *et. seq*, and abused its discretion by enjoining Russell's attempted redemption.[4]

¶8 "'[M]anifest abuse of discretion' is the appropriate standard for reviewing the granting of a preliminary or permanent injunction. A 'manifest' abuse of discretion is one that is obvious, evident or unmistakable." *Shammel v. Canyon Res. Corp.*, 2003 MT 372,

---

[4] Russell's briefing refers to Mountain View as Russell's creditor.

¶ 12, 319 Mont. 132, 82 P.3d 912.  The District Court granted preliminary injunction based on § 27-19-201(1)-(3), MCA, which provides:

> An injunction order may be granted in the following cases:
>
> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
>
> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
>
> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual.

¶9 Although the statute enumerates several grounds for issuance of a preliminary injunction, "only one subsection need be met to for an injunction to issue." *Sweet Grass Farms, Ltd. v. Bd. of Cty. Comm'rs*, 2000 MT 147, ¶ 27, 300 Mont. 66, 2 P.3d 825. However "[A]n applicant for a preliminary injunction must establish prima facie case, or show that it is at least doubtful whether or not he will suffer irreparable injury before his rights can be fully litigated." *Sandrock v. DeTienne*, 2010 MT 237, ¶ 16, 358 Mont. 175, 243 P.3d 1123 (citing *Benefis Healthcare v. Great Falls Clinic, LLP*, 2006 MT 254, ¶ 14, 334 Mont. 86, 146 P.3d 714).  "[W]hile only mentioned explicitly by subsection (2) in terms of a great or irreparable injury, the prevention of some degree of harm or injury is an overlapping concept that is implied within all of the subsections of the statute." *BAM Ventures, LLC v. Schifferman*, 2019 MT 67, ¶ 16, 395 Mont. 160, 437 P.3d 142.

7

¶10    Appellants Russell and Mountain View argue the District Court incorrectly applied a standard of strict compliance with the redemption statutes, while couching its analysis in the language of substantial compliance.  (The District Court found that "sufficient case has been made that Russell did not substantially comply with the redemption procedures mandated by § 25-13-801, MCA, *et. seq.*")  Appellants note our language in *Savoy v. Cascade Cty. Sheriff's Dep't*, 268 Mont 507, 514, 887 P.2d 160, 164 (1994), that "if a debtor, acting in good faith, has substantially complied with the procedural requirements of the rule in such a manner that the lender mortgagee is not injured or adversely affected, and is getting what he is entitled to, the law will not aid in depriving the mortgagor of his property for mere falling short of exact compliance with technicalities," and argue Russell's deviation from the statutory requirements in attempting to redeem the Property constituted minor, excusable irregularities.  Appellants ask that we apply a harmless error analysis because the redemption statutes are meant to be remedial in nature, citing *Grazer v. Jones*, 2012 UT 58, ¶ 18, 289 P.3d 437 (Utah) ("Our past decisions can be understood to rest not solely on an undefined notion of substantiality, but also on an analysis of prejudice or injury").

¶11    However, we are mindful that this is an appeal from a preliminary injunction.  We have cautioned that "a preliminary injunction does not determine the merits of the case." *Benefis*, ¶ 19.  We have stated in strong language that "we implore trial courts to keep in mind the standards outlined in § 27-19-201, MCA, when ruling on motions for preliminary injunctions and to be careful not to resolve ultimate issues of the case." *Benefis*, ¶ 32.

8

Much of the argument well-developed by Mountain View goes to ultimate legal conclusions to yet be made in the proceeding by the District Court. Here, the court was simply and correctly determining the need to preserve the status quo during the proceeding.

¶12 The District Court found there was sufficient evidence that 360 Reclaim will suffer irreparable harm if Russell was to continue to attempt his activities on the Property, or otherwise take possession. The record also supports the conclusion, made at this juncture, that 360 Reclaim would be prejudiced if it were to lose possession of the Scrap Yard for a redemption payment of $117,000. As the District Court reasoned, "360 Reclaim has presented a prima facie case showing that, in the event Defendant is allowed to continue his activities, it would render any judgment meaningless. To not enter a Preliminary Injunction appears likely to disrupt the status quo and cause immediate and irreparable harm to Plaintiff." Consequently, we conclude it was not an abuse of discretion to preserve the "last actual, peaceable, noncontested condition which preceded the pending controversy" pending the final outcome of the litigation. *Cole v. St. James Healthcare*, 2008 MT 453, ¶ 25, 348 Mont. 68, 199 P.3d 810; *see also BAM Ventures*, ¶ 18.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. We

affirm the preliminary injunction, and clarify that no opinion is expressed as to the ultimate merits of the action.

¶14    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON