No. 00-522

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 360

303 Mont. 342

16 P. 3d 342

FOUR RIVERS SEED COMPANY

and TED COOK,

Plaintiffs and Respondents,

v.

CIRCLE K FARMS, INC.,

and C. KENT KIRKSEY,

Defendants and Appellants.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Broadwater,

Honorable Dorothy McCarter, Judge Presiding

COUNSEL OF RECORD:

For Appellants:

Patrick F. Hooks, Hooks Law Office, Townsend, Montana

For Respondents:

Richard J. Dolan, Goetz, Gallik, Baldwin & Dolan, P.C., Bozeman,

Montana

Submitted on Briefs: October 18, 2000
Decided: December 27, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Plaintiffs, Four Rivers Seed Company and Ted Cook, filed this action in the District Court for the First Judicial District in Broadwater County to recover damages for breach of contract and conversion from the Defendants, Circle K Farms and Kent Kirksey, owner of Circle K Farms and for injunctive relief. The District Court issued a preliminary injunction. Circle K Farms and Kent Kirksey appeal. We affirm the judgment of the District Court.

¶2 Appellants present two issues on appeal:

¶3 1. Did the District Court err when it enjoined Circle K Farms from having its potato crop certified?

¶4 2. Did the District Court abuse its discretion when it did not require the Plaintiffs to post a bond pursuant to § 27-19-306, MCA?

## FACTUAL BACKGROUND

¶5 The United States Department of Agriculture and various universities (called public breeders) cross-breed certain varieties of seed potatoes and then grow them on a trial basis. Since the public breeders do not have the resources to grow the seeds in large numbers, they depend on private seed growers, including Ted Cook, to do so and complete the development process. Cook has worked in the seed potato business for 18 years.

¶6 The private seed potato growers take what is called "nuclear stock" from the public breeders and grow generation one (G-1) seed potatoes. From those, they produce G-2

potatoes. From the G-2 potatoes, they can grow G-3 potatoes. During this process, the grower sees no income for approximately four years because there is not enough seed to market. All seed potato crops must be certified by the State of Montana before they can be sold.

¶7 Approximately 11 years prior to commencement of this action, Cook began growing the Umatilla seed potato variety. He testified that it will take several more years before the degree of acceptance of this variety by commercial growers (as opposed to seed potato growers) is known. Although Cook and other potato growers have achieved much success with this variety, it is vulnerable to fusereum dry rot. With each successive generation, the vulnerability increases. Therefore, farmers in Montana (with the exception of Defendants) have chosen not to grow G-4 Umatilla seed potatoes despite regulations from the State of Montana allowing farmers to grow G-4 potato crops.

¶8 On February 8, 1999, Four River Seed Company and Ted Cook contracted with Circle K Farms and C. Kent Kirksey to sell 3500 hundred-weight (cwt) of Umatilla Generation Two seed potatoes to Circle K. The contract provided that Circle K would "grow, store and make ready for sale and delivery from their farm, 140 acres of certified Umatilla G-3 seed potatoes during the 1999 growing season." In the contract, Cook retained the exclusive right to market the G-3 seed potatoes grown by Circle K. Subsequently, Cook discovered that Circle K replanted part of the G-3 seed grown from the G-2 seed given to them in the contract in an attempt to grow their own G-4 certified seed potato.

¶9 According to Cook, Montana maintains one of the best reputations for seed potatoes in the country. Cook, as well, has earned a solid reputation as a potato farmer. Concerned about both the danger to Montana and his reputation as well as the loss of his investment, Cook filed a complaint and a motion for a preliminary injunction to enjoin Circle K from certifying the crop as G-4 seed potatoes. This action was not intended to otherwise limit use or sale of the potato crop. The District Court granted the preliminary injunction and Circle K appeals.

## DISCUSSION

## ISSUE ONE

¶10 Did the District Court err when it enjoined Circle K Farms from having its potato crop certified?

¶11 Circle K contends that the District Court misinterpreted the contract and, therefore, erred by granting the preliminary injunction. It also asserts that because money damages can be easily ascertained, a preliminary injunction is not necessary. We review a preliminary injunction for an abuse of discretion. *See Sweetgrass Farms, LTD. v. Board of County Comm'rs of Sweetgrass County,* 2000 MT 147, ¶ 20, 300 Mont. 66, ¶ 20, 2 P.3d 825, ¶ 20.

¶12 A preliminary injunction does not resolve the merits of a case but rather prevents further injury or irreparable harm by preserving the status quo of the subject in controversy pending an adjudication on its merits. *Knudson v. McDunn* (1995)*,* 271 Mont. 61, 65, 894 P.2d 295, 298. The court has a duty to balance the equities and minimize potential damage when considering an application for a preliminary injunction. *Porter v. K&S Partnership* (1981), 192 Mont. 175, 180, 627 P.2d 836, 839.

¶13 According to § 27-19-201, MCA, a preliminary injunction may be granted

> (1) when it appears that the applicant is entitled to the relief demanded and the relief or any part of the relief consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually;
>
> (2) when it appears that the commission or continuance of some act during the litigation would produce a great or irreparable injury to the applicant;
>
> (3) when it appears during the litigation that the adverse party is doing or threatens or is about to do or is procuring or suffering to be done some act in violation of the applicant's rights, respecting the subject of the action, and tending to render the judgment ineffectual . . . .

Section 27-19-201, MCA. These subsections are disjunctive and a district court is not required to make a finding that each circumstance exists. *Stark v. Borner* (1987), 226 Mont. 356, 358, 735 P.2d 314, 317. However, in this case, the District Court found and concluded that injunctive relief was justified pursuant to all three bases.

¶14 The District Court found that if the potatoes became certified before the conclusion of the case, Cook would likely lose the ability to keep G-4 seed potatoes out of the market and would lose control over them.

¶15 The contract limited Circle K's use of the G-2 seed to "grow[ing], stor[ing], and mak[ing] ready for sale and delivery from their farm, 140 acres of certified Umatilla G-3 seed potatoes during the 1999 growing season." However, Circle K planted some of the seed potatoes to increase its own supply and create a fourth generation. During the trial, Kent Kirksey admitted that these actions contravened the language of the contract. This admission at trial established a prima facie case of breach of contract and conversion. However, Kirksey contends that the remedy is simply the amount of damages Cook has coming for the loss of his exclusive right to market the G-3 seed and that injunctive relief is neither necessary nor justified.

¶16 Cook, on the other hand, contends that use of the G-3 seed to grow G-4 seed poses a serious threat to his reputation and to the market for Montana grown seed potatoes. He testified that the spread of fusereum in the G-4 seed is guaranteed and that the entire market for that variety would dry up-wiping out his investment and future returns. He testified that the monetary damages from the loss of his exclusive right to market was only a small part of the problem.

¶17 The District Court held that irreparable injury to Cook would likely occur absent a preliminary injunction. The District Court found that a failed crop "would threaten the reputation of the Umatilla seed variety, and destroy or severely diminish the Plaintiff's investment in that variety." We find substantial evidence to support the District Court's finding that irreparable injury to Plaintiffs would occur without injunctive relief.

¶18 Furthermore, without a preliminary injunction, any monetary or legal remedy would likely be ineffectual. According to the record, pecuniary compensation does not afford Cook adequate relief. Monetary damages are inadequate because of the risk to Cook's investment and the risk of damage to his reputation, the value of which is difficult to calculate. The District Court found that "once the reputation of the seed potato variety is tainted, it is difficult or impossible to repair that reputation." This finding is also supported by substantial evidence.

¶19 Therefore, we conclude that the District Court did not abuse its discretion when it issued a preliminary injunction.

## ISSUE TWO

¶20 Did the District Court abuse its discretion when it did not require the Plaintiffs to post

a bond pursuant to § 27-19-306, MCA?

¶21 Circle K contends that the District Court erred by not requiring Respondents to post a bond for damages pursuant to § 27-19-306, MCA which provides that:

> [O]n granting an injunction or restraining order, the judge shall require a written undertaking to be given by the applicant for the payment of the costs and damages that may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. Except as provided in subsection (2), the undertaking:
>
> (a) must be fixed at a sum that the judge considers proper; and
>
> (b) may be waived:
>
> (i) in domestic disputes; or
>
> (ii) in the interest of justice.

Section 27-19-306, MCA. The decision whether to require a security bond is within the sound discretion of the district court and will not be overturned absent an abuse of discretion. *May v. First Nat'l Pawn Brokers, Ltd.* (1995), 270 Mont. 132, 134, 890 P.2d 386, 388.

¶21 Circle K contends that the District Court must require Cook to provide security in this situation. Circle K relies on *Stark v. Borner* (1987), 226 Mont. 356, 735 P.2d 314. In *Stark*, we permitted a lower court to waive the security requirement because the court had adequately protected the interests of both parties. Circle K therefore asserts that since the lower court did not adequately protect its interests, security should have been required. However, this rationale is inconsistent with the language of the statute. Section 27-19-306, MCA, provides an opportunity for the district court to waive the security *whenever* it would be in the interests of justice. Limiting the statutory discretion to situations where the court protects the defendant would impermissibly narrow the discretion provided for in § 27-19-306.

¶22 The record demonstrates that the District Court considered all the evidence and determined that requiring a bond would be unfair to Cook. All Circle K has been denied is the opportunity to certify fourth generation seed potatoes which it admits that it never had the contractual right to do in the first place. The injunction does not take the crop away

from the Circle K, nor does it permanently deprive them of any profit. Therefore, we conclude that the District Court did not abuse its discretion when it waived the security requirement.

¶23 We affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART