FILED

06/20/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0504

DA 22-0504

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 123N

KENNETH D. BENESH, Individually, as Trustee of the
Ken and Gina Benesh Living Trust dated 1/3/2019, and
on behalf of Rogue Barrels, LLC, a Montana entity,

      Petitioners and Appellees,

   v.

MICHAEL A. HEBERT, Individually, and on behalf of
Rogue Barrels, LLC, a Montana entity, and DOES 1-10,

      Respondents and Appellants.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District, In and For the County of Flathead, Cause No. DV-22-332(B) Honorable Robert B. Allison, Presiding Judge |

COUNSEL OF RECORD:

      For Appellants:

            Tyson A. McLean, Jordan A. Pallesi, Kris A. McLean Law Firm, PLLC, Missoula, Montana

      For Appellees:

            Bruce A. Fredrickson, Angela M. LeDuc, Rocky Mountain Law Partners, P.C., Kalispell, Montana

                    Submitted on Briefs: March 29, 2023

                            Decided: June 20, 2023

Filed:

_____
                Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    This appeal challenges the Eleventh Judicial District Court's Findings of Fact, Conclusions of Law, Rationale and Order on Petition for Preliminary Injunction and Pending Motions, entered in August of 2022.  The District Court's order granted a preliminary injunction stemming from an Amended Temporary Restraining Order and Order to Show Cause and Notice of Hearing entered in April of 2022.  Appellee Kenneth Benesh filed for both the temporary restraining order and the subsequent preliminary injunction on the basis of asserted conduct by the co-owner of Rogue Barrels, Appellant Michael Hebert.  The following discussion is based upon the District Court's findings of fact, which we note are adopted for purposes of a preliminary injunction and, therefore, are not final determinations.  *See Flying T Ranch, LLC v. Catlin Ranch, LP*, 2022 MT 162, ¶ 38, 409 Mont. 478, 515 P.3d 806 ("'In determining the merits of a preliminary injunction, it is not the province of either the District Court or this Court on appeal to determine finally matters that may arise upon a trial on the merits.'") (citation omitted).

¶3    Hebert organized Rogue Barrels, LLC, a rifle barrel and associate parts manufacturer, in July of 2020 (company).  In August of 2020, Hebert and Benesh entered

2

an Operating Agreement (Agreement) for the company, which gave 50% ownership rights and equal control over the management of the company to Hebert and Benesh. The Agreement did not grant unilateral control to Hebert. Hebert and Benesh executed a promissory note on behalf of Rogue Barrels in the amount of $528,673, payable to Benesh, for a loan Benesh made for the company. Hebert executed a Commercial Pledge Agreement pledging his 50% membership interest in Rogue Barrels as collateral for the loan. In October of 2020, Rogue Barrels used the proceeds from the Benesh loan to purchase the assets of Remington (formerly Montana Rifle Company). Hebert and Benesh secured a line of credit from Glacier Bank, which was converted into a long-term promissory note in the amount of $639,000 (Glacier Note). Benesh personally guaranteed the loan. The Glacier loan proceeds were used as down payment on the purchase of two Precihole Machines for the manufacture of rifle barrels.

¶4 The District Court found that, shortly thereafter, the relationship between Hebert and Benesh soured. Without notifying Benesh, Hebert sold some of the equipment and did not apply the proceeds to the Glacier Note as required by its terms. In April of 2021, Hebert attempted to buy out Benesh's interest in Rogue Barrels. While Hebert wrote multiple checks offered as repayment for Benesh's loan and his interest in the company, the District Court found "certain prerequisite conditions for the buyout were not met," such as removing Benesh as personal guarantor of the Glacier Note. Thus, Benesh remained an equal member of Rogue Barrels. In the subsequent months, Benesh took a back seat in the

company's operation, believing that, at some point, the buyout provisions would be completed and he would be removed from the company.

¶5 Hebert then entered multiple agreements, opened lines of credit, and purchased tools and equipment without the approval of Benesh, contrary to the terms of yet existent Operating Agreement. In November of 2021, Hebert obtained a loan from EBF Holdings LLC, in the amount of $19,275. The loan included interest rates in excess of 100%. Beginning in August of 2021, Hebert ceased making federal payroll deposits for Rogue Barrels. The company lost its operation and production manager, Gary Fikes, who complained Hebert impersonated him in conversations with customers, and micromanaged him to the point where he could not complete his job. Fikes testified that Hebert used company money to splurge on new inventions rather than funding the company or paying off loans and company debt. Problems magnified as the company failed to make shipping deadlines, failed to order the requisite parts for manufacturing, and failed to deliver product as promised. The company lost large customers such as CBC Industries and Battle Arms Development.

¶6 Benesh concluded that the buyout of his interest was not going to be accomplished, and thus sought a temporary restraining order (TRO) precluding Hebert from making any further management decisions for the company. The District Court granted the TRO, which was amended and reissued two weeks later by the District Court following a substitution of judge requested by Hebert. Benesh then petitioned for the TRO to be converted into a preliminary injunction, from which Hebert appeals.

¶7    We review a district court's decision to grant a preliminary injunction for an abuse of discretion. A district court has broad discretion when deciding whether to grant a preliminary injunction based on the "applicable findings of fact and conclusions of law." *Davis v. Westphal*, 2017 MT 276, ¶ 10, 389 Mont. 251, 405 P.3d 73. We review the district court's findings of fact for clear error. *Davis*, ¶ 10. A district court's conclusions of law are reviewed for correctness. *Sandrock v. DeTienne*, 2010 MT 237, ¶ 13, 358 Mont. 175, 243 P.3d 1123 (internal citations omitted). We afford a district court great deference in its decision to grant or not grant a preliminary injunction, noting that a preliminary injunction does not decide the merits of a case, rather it merely "prevents further injury or irreparable harm by preserving the status quo of the subject in controversy pending an adjudication on its merits." *Four Rivers Seed Co. v. Circle K Farms, Inc.*, 2000 MT 360, ¶¶ 11-12, 303 Mont. 342, 344, 16 P.3d 342.

¶8    Hebert argues the District Court lacked jurisdiction to grant a temporary restraining order or a preliminary injunction because Benesh never pled additional claims nor filed a complaint. However, we have explained that the 1979 amendments to Section 27-19-301, MCA, clarified the Legislature's intent to authorize the issuance of a preliminary injunction regardless of whether a complaint has first been filed: "The legislative history of the 1979 amendments additionally indicates that an injunction could be issued upon application and notice without filing a complaint and issuing summons." *City of Great Falls v. Forbes*, 2011 MT 12, ¶ 14, 359 Mont. 140, 247 P.3d 1086. In *City of Great Falls*, we determined "the City followed the proper procedure under §§ 27-19-301 and -303, MCA, by filing an

application for an injunction, requesting that the District Court set a hearing date, and providing reasonable notice to [the opposing party]," despite the fact the City had not filed a complaint. *City of Great Falls*, ¶ 15. Benesh followed a similar procedure here, seeking a temporary restraining order followed by a preliminary injunction, requesting the District Court to set a show cause hearing and providing Hebert notice of the hearing, and we are not persuaded by Hebert's distinguishing of *City of Great Falls*.

¶9 Hebert argues the TRO was granted in error because he was not given notice prior to its issuance. However, a temporary restraining order may be issued without notice when "(1) the applicant or the applicant's attorney makes a showing that the requirements of 27-19-201(1) are met." Section 27-19-315, MCA. In turn, § 27-19-201(1), MCA, provides that a preliminary injunction or temporary restraining order may be granted when the applicant establishes that "(a) the applicant is likely to succeed on the merits; (b) the applicant is likely to suffer irreparable harm in the absence of preliminary relief; (c) the balance of equities tips in the applicant's favor; and (d) the order is in the public interest."[1] The District Court's initial order, later amended and reissued, found that a delay in "relief from the Defendant's actions would cause immediate and irreparable injury to the Plaintiffs before the Defendant could be heard in opposition" and therefore determined the

---

[1] A temporary restraining order will "expire by its terms within the time after entry, not to exceed 10 days, as the court or judge fixes." Section 27-19-316(4), MCA. The time can be extended as provided in § 27-19-317, MCA.

requirements of §§ 27-19-315, MCA, and 27-19-201(1), MCA, had been satisfied.[2]  As such, the TRO was properly issued.

¶10    Hebert argues a preliminary injunction was improper because money damages could have alleviated any harm.  In *Van Loan v. Van Loan*, 271 Mont. 176, 895 P.2d 614 (1995), we adopted a four-part test to determine whether a "preliminary injunction should issue when a party's monetary judgment may be made ineffectual by the actions of the adverse party thereby irreparably injuring the applicant."  *Van Loan*, 271 Mont. at 182.  The four-part test is similar to § 27-19-201, MCA, and analyzes "(1) the likelihood that the movant will succeed on the merits of the action; (2) the likelihood that the movant will suffer irreparable injury absent the issuance of a preliminary injunction; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party (a balancing of the equities); and (4) the injunction, if issued, would not be adverse to the public interest."  *Van Loan*, 271 Mont. at 182.  Benesh presented witnesses with personal knowledge of Hebert's management of the company, as well as numerous witness affidavits, and presented documentation of the loans and notes executed by Hebert without Benesh's consent, demonstrating his likelihood of prevailing on the merits.  Benesh demonstrated the likelihood that he would suffer irreparable injury by establishing that, as a personal guarantor of loans to Rogue Barrels, he stands to be damaged by losses and loss

---

[2] *See Driscoll v. Stapleton*, 2020 MT 247, ¶ 13, 401 Mont. 405, 473 P.3d 386 (noting that the subsections of § 27-19-201, MCA, are disjunctive, and therefore a court "need find just one subsection satisfied in order to issue a preliminary injunction").

7

of collateral under Benesh's management that, as concluded by the District Court, "could render ineffectual any judgment received by Benesh," even though, at the time the petition was filed, the company's obligations were current. Benesh established the damage he could sustain greatly outweighed the damage an injunction would cause to Hebert or Rogue Barrels. Under Hebert's control, Rogue Barrels had lost customers, lost key employees, was not meeting order deadlines, and was accumulating significant debt. If anything, Rogue Barrels stood to improve its position under alternate management. Finally, the District Court found that "the injunction is not adverse to public interest as it seeks to preserve a business and the jobs created by the business." We conclude these reasons are sound. The inherent risk posed to Rogue Barrels under Hebert's continued management was clearly established, and we find no error with the District Court's conclusion that money damages would not be sufficient to mitigate the potential harm.

¶11 Hebert argues the preliminary injunction does not serve to maintain the status quo. "In considering whether to issue a preliminary injunction, a district court must exercise its otherwise broad discretion only 'in furtherance of the limited purpose of [a] preliminary injunction[:] to preserve the status quo and minimize the harm to all parties pending final resolution on the merits.'" *Driscoll v. Stapleton*, 2020 MT 247, ¶ 14, 401 Mont. 405, 473 P.3d 386 (quoting *Davis v. Westphal*, 2017 MT 276, ¶ 24, 389 Mont. 251, 405 P.3d 73). The status quo is the "'last actual, peaceable, non[-]contested condition which preceded the pending controversy.'" *Benefis Healthcare v. Great Falls Clinic, LLP*, 2006 MT 254, ¶ 14, 334 Mont. 86, 146 P.3d 714 (citing *Porter v. K & S Partnership*, 192 Mont. 175, 181,

8

627 P.2d 836, 839 (1981) (citations omitted). Hebert contends the last actual, peaceable, non-contested condition preceding the controversy was "Mr. Hebert running Rogue Barrels with Mr. Benesh giving him 'free reign' to do so," and that the District Court's removal of him was too broad a remedy. However, based upon the District Court's findings, the last peaceable moment between Hebert, Benesh, and Rogue Barrels occurred when Hebert and Benesh were acting partners when the company was initiated. Since then, Hebert sought to minimize Benesh's involvement and undertook rogue management actions, without Benesh's knowledge or consent. The District Court sought to return Rogue Barrels to its status quo as a properly managed and, hopefully, profitable business enterprise ("Hebert must step aside and allow Benesh to manage and try to restore feasibility to Rogue Barrels.").

¶12     Hebert argues the District Court made impermissible final findings of fact that he will have no opportunity to refute because there is no case on the merits pending.[3] A district court is required to make findings of fact and conclusions of law when either granting or denying an application for preliminary injunctive relief. Rule 52(a), M. R. Civ. P.; *Snavely v. St. John ex rel Estate of Snavely*, 2006 MT 175, ¶¶ 9-10, 333 Mont. 16, 140 P.3d 492. These findings of fact and conclusions of law comprise the prima facie case that a party must establish to be entitled to a preliminary injunction: "Because a preliminary injunction

---

[3] The parties' briefing acknowledges that Benesh later filed a separate action relating to the merits of the dispute, in which Hebert answered and filed counterclaims.

does not decide the ultimate merits of a case, however, a party need establish only a prima facie violation of its rights to be entitled to a preliminary injunction – even if such evidence ultimately may not be sufficient to prevail at trial." *Driscoll*, ¶¶ 15-16.  The District Court, upon consideration of the evidence and through extensive findings, determined Benesh had established a prima facie case that Hebert had engaged in mismanagement, entitling him to a preliminary injunction.  While the District Court did not explicitly state its findings were not final and were entered only for purposes of the preliminary judgment, that is the context of its order, and we clarify the preliminary effect thereof.  *Flying T Ranch, LLC*, ¶¶ 38-39.

¶13    Hebert contends the District Court clearly erred in its determination of several findings of fact.  We review a district court's findings of fact for clear error.  A district court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if the trial court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed.  *Holtz v. Deisz*, 2003 MT 132, ¶ 15, 316 Mont. 77, 68 P.3d 828.  Most of the findings contested by Hebert relate to the nature of Benesh's interest in the company, held in the name of the Ken and Gina Benesh Trust.  While, as Hebert argues, the ownership and membership of the company is a disputed fact, it has little bearing on the primary issue of Hebert's mismanagement and, again, the District Court's findings on the particular manner in which Hebert held an ownership interest is not a final determination.  More generally, the record demonstrates the District Court did not render clearly erroneous

10

factual findings, which were supported by substantial evidence, including affidavit, witness testimony, and documentation.

¶14 Finally, Hebert challenges the preliminary injunction's restrictions upon his speech as impermissible, over-broad prior restraints upon his free speech. The District Court order affirms the TRO's prohibition upon Hebert harassing or threatening Rogue Barrels, specifically, from "taking any action harassing or threatening any client, customer, vendor, creditor or other business associate of the company." While, "of all the forms of infringements on the right to free speech prior restraints 'are the most serious and least tolerable,'" *St. James Healthcare v. Cole*, 2008 MT 44, ¶ 26, 341 Mont. 368, 178 P.3d 696 (citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S. Ct. 2791, 2803, 49 L. Ed. 2d 683 (1976)), we have recognized that restraints that are "'precis[ely] and narrowly tailored to achieve the pin-pointed objective of the needs of the case'" are permissible. *St. James*, ¶ 31 (internal citations omitted). We held in *St. James* that because the paragraphs in question "target[ed] only speech and conduct that is intended to embarrass, annoy, harass or threaten, such conduct may be enjoyed and does not amount to an unconstitutional prior restraint on free speech." *St. James*, ¶ 37. The same is true here. Hebert is restrained only from taking any action harassing or threatening or interfering with the work of the company and its employees. The District Court found a basis to believe that actions by Hebert included, but are not limited to, impersonating an employee, lying to and deceiving customers, and more. We conclude the District Court did not err in concluding the stated

restrictions were not overly broad in light of the actions Hebert has taken, according to the evidence.

¶15     We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶16     We affirm entry of the preliminary injunction.

/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR